## FISCH et al. v. GENERAL MOTORS CORPORATION.

## BATEMAN et al. v. FORD MOTOR CO.
### Nos. 10692, 10685.

Circuit Court of Appeals.
Sixth Circuit.
Aug. 2, 1948.

**No. 10692:**

Ernest Goodman, of Detroit, Mich. (Ernest Goodman, Jack N. Tucker and N. L. Smokler, all of Detroit, Mich., on the brief; Harry H. Anbemder, Morton A. Eden, Benjamin J. Safir and Geo. W. Crockett, Jr., all of Detroit, Mich., of counsel), for appellants Fisch and others.

Nicholas J. Rosiello, of Detroit, Mich. (Henry M. Hogan and Nicholas J. Rosiello, both of Detroit, Mich., on the brief), for appellee General Motors Corp.

**No. 10685:**

Lowell Goerlick, of Toledo, Ohio (Nicholas J. Rothe, of Detroit, Mich., and Lamb, Goerlich & Mack, of Toledo, Ohio on the brief; Edward Lamb and Lowell Goerlich, both of Toledo, Ohio, of counsel), for appellants Bateman and others.

Rockwell T. Gust, of Detroit, Mich. (Butzel, Eaman, Long, Gust & Kennedy, of Detroit, Mich., By Rockwell T. Gust, of Detroit, Mich., on the brief), for appellee Ford Motor Co.

Tom C. Clark, H. G. Morison, Enoch E. Ellison and Johanna M. D'Amico, all of Washington, D. C. and Thomas P. Thornton and Roger P. O'Connor, both of Detroit, Mich., for United States as Intervenor.

Beaumont, Smith & Harris, Albert E. Meder, Frank E. Cooper and Charles Wright III, all of Detroit, Mich., amici curiae in support of District Court's order of dismissal.

Before HICKS, SIMONS and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

These suits were brought by plaintiffs and other employees of defendants. Originally the complaint sought to recover alleged unpaid wages for overtime work such as "walking time" and other activities preliminary to actual work, and for liquidated damages and attorney's fees, under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., as interpreted in Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. The suits were brought prior to the Portal-to-Portal Act, Ch. 52, Public Law 49, May 14, 1947, 29 U.S.C.A. § 251 et seq. After the Portal-to-Portal Act became effective defendants filed motions to dismiss upon the ground that the court had no jurisdiction of the subject matter. Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Thereupon the plaintiffs amended their complaints by alleging that they were entitled to payment because the defendants had entered into a contract or contracts with the United States or its agencies under which the defendants agreed that they would comply with all federal laws and regulations, including the Fair Labor Standards Act and the regulations issued with relation thereto, and that these contracts inured to the benefit of the plaintiffs. The Government intervened and for plea said that the Portal-to-Portal Act conformed in all respects to the requirements of the Constitution. The court sustained the motions to dismiss and plaintiffs appealed.

As the cases involve similar questions and were heard together, one opinion will suffice. In view of the large number of Judicial opinions already announced upon the issues involved, we think it appropriate to limit this opinion rather closely to a simple statement of our conclusions and the reasons therefor.

The parties are referred to as plaintiffs and defendants as they appeared in the court below.

We cannot yield to plaintiffs' contention that the court's action on the motion to dismiss was premature. If it appeared to the satisfaction of the court *at any time* after the suits were brought that they did not really and substantially involve a dispute or controversy properly within its jurisdiction, it was its duty to proceed no further and to dismiss the suit. Title 28 U. S.C.A. § 80; Kline v. Burke Const. Co., 260 U.S. 226, 234, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Gallardo v. Santini Fertilizer Co., 275 U.S. 62, 48 S.Ct. 24, 72 L.Ed. 157; The Assessors v. Osbornes, 76 U.S. 567, 19 L.Ed. 748; Hallowel v. Commons, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409. The court was not relieved of this duty by the presence of a constitutional question for the reason that the Constitution is the supreme law.

The Fair Labor Standards Act of 1938 was declared to be constitutional in United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430 [see also Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296], and within the congressional power to regulate commerce. When these actions were brought the court had jurisdiction to entertain them under the Fair Labor Standards Act because, (1) the Act constituted a regulation of interstate commerce [Title 28 U.S.C.A. § 41(8)]; and (2) because jurisdiction was especially conferred by Sec. 216(b) of the Act. Johnson v. Butler Bros., 8 Cir., 162 F. 2d 87, 88.

The complaints set out the grounds upon which the court's jurisdiction depended and a short and plain statement of their claims for overtime wages and other preliminary activities, etc., which by the Mount Clemens case, supra, were declared compensable under the Fair Labor Standards Act.

The Portal-to-Portal Act caused a different situation to be presented. It is an amendment to the Fair Labor Standards Act [Holland v. General Motors Corporation, D.C., 75 F.Supp. 274, 276], and like its predecessor, is within the domain of interstate commerce. In Rogers Cartage Co. v. Reynolds, 6 Cir., 166 F.2d 317, we declared Sections 9 and 11 thereof to be constitutional. Part I embraces "Findings and Policy," herein later referred to; and in Part II, which embraces the subject of "Existing Claims," appears the following:

"Sec. 2. Relief from certain existing claims under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, and the Bacon-Davis Act—

"(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act (in any action or proceeding commenced prior to or on or after the date of the enactment of this Act), on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to the date of the enactment of this Act, except an activity which was compensable by either—

\*       \*       \*.       \*       \*       \*

"(d) No court of the United States, of any State, Territory, or possession of the United States, or of the District of Columbia, shall have jurisdiction of any action or proceeding, whether instituted prior to or on or after the date of the enactment of this Act, to enforce liability or impose punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, under the Walsh-Healey Act, or under the Bacon-Davis Act, to the extent that such action or proceeding seeks to enforce any liability or impose any punishment with respect to an activity which was not compensable under subsections (a) and (b) of this section."

It is obvious that if subsections (a) and (d) of Section 2, Part II, are valid, plaintiffs' claims are precluded. Sec. 2(a) nullifies employer liability and Sec. 2(d) withdraws the jurisdiction of the court to act on them. Plaintiffs challenge the validity of these sections upon constitutional grounds.

■ We make certain preliminary observations,—(1) that "every possible presumption is in favor of the validity of an act of Congress until overcome beyond rational doubt" [Adkins v. Childrens Hospital, 261 U.S. 525, 544, 43 S.Ct. 394, 396, 67 L.Ed. 785, 24 A.L.R. 1238]; (2) that "the burden of establishing the unconstitutionality of a statute rests upon him who assails it" [Metropolitan Cas. Ins. Co. v. Brownell, 294 U.S. 580, 584, 55 S.Ct. 538, 540, 79 L. Ed. 1070]; and (3) that a court cannot declare a statute unconstitutional solely upon the ground that it is unjust and oppressive and will work hardship and loss, or because it is supposed to violate some natural, social or political rights of a citizen, unless it can be shown that such injustice is prohibited or such rights protected by the Constitution. Cooley's Constitutional Limitations, 8th ed., Vol. I, p. 341; Norman v. Baltimore & O. R. Co., 294 U.S. 240, 307, 55 S. Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352.

■ Plaintiffs contend that their causes of action are founded upon rights vested in them and protected by the due process clause of the Fifth Amendment, which cannot be disturbed. We think plaintiffs' rights were not "vested rights" in the sense contended. The law is thus stated by Judge Cooley:

"And it may be well at this point to examine in the light of the reported cases the question, What is a vested right in the constitutional sense? and when we have solved that question, we may be the better able to judge under what circumstances one may be justified in resisting a change in the general laws of the State affecting his interests, and how far special legislation may control his rights without coming under legal condemnation. In organized society every man holds all he possesses, and looks forward to all he hopes for, through the aid and under the protection of the laws; 'but as changes of circumstances and of public opinion, as well as other reasons affecting the public policy, are all the while calling for changes in the laws, and as these changes must influence more or less the value and stability of private possessions, and strengthen or destroy well-founded hopes, and as the power to make very many of them could not be disputed without denying the right of the political community to prosper and advance, it is obvious that many rights, privileges, and exemptions which usually pertain to ownership under a particular state of the law, and many reasonable expectations, cannot be regarded as vested rights in any legal sense.' * * *" Cooley's Constitut. Lim., Vol. II, pp. 746-7.

See Dibrell v. Morris' Heirs, 89 Tenn. 497, 514, 15 S.W. 87, 12 L.R.A. 70. In Pearsall v. Great Northern R., 161 U.S. 646, 673, 16 S.Ct. 705, 713, 40 L.Ed. 838, the Supreme Court said:

"A 'vested right' is defined by Fearne, in his work upon Contingent Remainders, as 'an immediate, fixed right of present or future enjoyment'; and by Chancellor Kent as 'an immediate right of present enjoyment, or a present, fixed right of future enjoyment.' 4 Kent Com. 202. It is said by Mr. Justice Cooley that 'rights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. * * *'"

■ The plaintiffs' causes of action are not founded altogether simply upon contract executed by the free consent and agreement of the parties thereto. The contracts were based upon subject matter in respect to which Congress had authority to legislate; and did not establish fixed rights of either present or future enjoyment. They were regulated by the Fair Labor Standards Act as construed in Tennessee Coal, Iron & R. Co. v. Muscoda Local, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Jewell Ridge Coal Corporation v. Local No. 6167, 325 U.S. 161, 65 S. Ct. 1063, 89 L.Ed. 1534, and especially by

the Mount Clemens decision. Plaintiffs could not expect that their status or rights would remain unchanged through changing circumstances and conditions. They could reasonably anticipate changes in the law. The proposition that their rights granted by the Congress under the commerce clause could not be taken away by congressional legislation under the same clause, is self-contradictory. Rights secured even by private contract may be abrogated by subsequent legislation when authorized by constitutional provisions. See Norman v. Baltimore & O. R. R. Co., supra; Louisville & N. R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671; American Power & L. Co. v. S. E. C., 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103; Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 226, 20 S.Ct. 96, 44 L.Ed. 136; Seese v. Bethlehem Steel Co., 4 Cir., 168 F.2d 58; Rogers Cartage Co. v. Reynolds, supra. In North American Co. v. S. E. C., 327 U.S. 686, 704, 66 S.Ct. 785, 796, 90 L.Ed. 945, the court said:

"For nearly one hundred and twenty-five years, this Court has recognized that the power of Congress over interstate commerce is 'the power to regulate; that is, to prescribe the rule by which commerce is to be governed. This power, like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution.'" See Norris v. Crocker, 54 U.S. 429, 473, 14 L.Ed. 210.

Louisville Bridge Co. v. United States, 242 U.S. 409, 421, 37 S.Ct. 158, 61 L. Ed. 395, is in point. The Bridge Company had erected a bridge across the Ohio river under a franchise granted by an Act of Congress. Subsequently Congress passed a statute authorizing the Secretary of War to require any changes in existing bridges he deemed necessary to remove obstructions from navigable waterways. He issued an order requiring the Bridge Company to raise the level of the bridge at its own expense. In 242 U.S. at page 419, 37 S.Ct. at page 160, 61 L.Ed. 395, the court said:

"While scrutinizing the acts of 1862 [12 Stat. 569], and 1865 [13 Stat. 431], in the effort to determine the legislative intent as therein expressed, we should primarily consider the fact that they were exertions of a power to regulate commerce. Such a regulation, designed as it is to furnish a guiding rule for future conduct, carries with it the suggestion that it may not always remain unchanged. And since our interstate and foreign commerce is a thing that grows with the growth of the people, and its instrumentalities change with the development and progress of the country, it was not natural that Congress, in enacting a regulation of such commerce, should intend to put shackles upon its own power in respect of future regulation. The act declared that the bridge, when erected, should be 'a lawful structure;' but there are no words of perpetuity, nor any express covenant against a change in the law. * * *"

As we read the case of Brooklyn Bank v. O'Neil, supra, the Supreme Court upheld the "liquidated damages" provision of the Fair Labor Standards Act on the theory that it was in the public interest to effectuate a legislative policy. It is nothing short of a paradox to say that the Congress could not abolish this previously granted right if it concluded that the public interest required a change.

Plaintiffs lean heavily upon the cases of Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, and Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434. Neither case is apposite. In the Radford case there was an attempt to abridge the *substantive right of a mortgagee in specific property held as security.* This was of course forbidden by the Fifth Amendment. In the Lynch case it was held that war risk insurance policies *were contracts* and as such were property protected by the Fifth Amendment. It may be said of other cases urged upon us by plaintiffs that some of them are distinguishable upon their facts and that others deal with the Fourteenth Amendment rather than the Fifth.

■ It is urged that the Portal-to-Portal Act is retroactive and applies to plaintiffs' causes of action. This in some respects is undoubtedly true but retroactive laws are

not prohibited by the Constitution in civil cases. We have no power to declare them void upon that ground alone. Blount v. Windley, 95 U.S. 173, 180, 24 L.Ed. 424; Watson v. Mercer, 33 U.S. 56, 70, 8 L.Ed. 876. See also Sobel Corrugated & Wooden Box Co. v. Fleming, Adm'r, 6 Cir., 165 F. 2d 568. The Congress made its own "Findings and Policy" and drew therefrom the conclusion that the Act as interpreted by the Mount Clemens decision was seriously interfering with interstate commerce,—that the operation of the Act had placed a burden upon commerce and was an obstruction to the free flow of goods in the stream of commerce; and that it was necessary in the protection of commerce and in the public interest and general welfare and essential to national defense that the Act be passed. We find nothing in the Constitution that challenges the retrospective features of the Act. See McNair v. Knott, 302 U.S. 369, 373, 58 S.Ct. 245, 82 L.Ed. 307.

We cannot regard the Act as arbitrary, unreasonable or capricious. The formulation of the "Findings and Policy" belong solely to the Congress and not to us. United States v. Dubilier Condenser Corporation, 289 U.S. 178, 198, 53 S.Ct. 554, 77 L.Ed. 1114, 85 A.L.R. 1488; American Power Co. v. S. E. C., supra, 329. U.S. at page 106, 67 S.Ct. at page 142, 91 L.Ed. 103; North American Co. v. S. E. C., supra, 327 U.S. at page 708, 66 S.Ct. at page 797, 90 L.Ed. 945. For that reason we undertake no discussion of the "Findings and Policy" further than to say that they negative the contention that the Act was so unreasonable as to be void. The Act was relevant to the policy which Congress saw fit to, and did, adopt. Nebbia v. New York, 291 U.S. 502, 539, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469.

Plaintiffs say that Sec. 2(d) of the Portal-to-Portal Act is unconstitutional in that it is a usurpation of judicial power as set forth in Article III, Sec. 1 of the Constitution. Article III, Sec. 1, vests the judicial power of the United States in the Supreme Court "and in such inferior Courts as the Congress may from time to time ordain and establish"; and under Sec. 2 of the same Article this judicial power is extended "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, * * *"

Reading Article III as a whole, it cannot be doubted that the district courts have the power to protect a citizen against the deprivation of his property without due process of law as provided in the Fifth Amendment; otherwise the guaranty of the Fifth Amendment is a hollow mockery. But as heretofore indicated, the courts have defined the word "property" found in the Fifth Amendment, not by "technical questions of title" but in its relation to the interstate commerce clause. The Pipe Line cases (United States v. Ohio Oil Co.), 234 U.S. 548, 560, 34 S.Ct. 956, 58 L.Ed. 1459. Plaintiffs' difficulty is that neither the Portal-to-Portal Act nor any portion thereof seeks to interfere with the power of the judiciary to protect rights vested under the Fifth Amendment. The principal purpose of the Act is to relieve employers from claims of employees stemming from the Mount Clemens decision, but it does not undertake to reverse that decision. As above indicated these claims do not represent vested rights. The Act in no way interferes with the powers of the judiciary. Its general objective is "to regulate commerce. * * *" We think that in its enactment the Congress stayed within its own field.

It is further argued that the withdrawal by Sec. 2(d) of the Portal-to-Portal Act from the district courts of jurisdiction over plaintiffs' causes of action is likewise an unconstitutional usurpation of judicial power. We cannot agree. The district courts are not courts of general jurisdiction. Their jurisdiction is limited and their powers lie dormant until jurisdiction is conferred by the Congress under its constitutional authority and jurisdiction cannot be conferred in any other way. Mayor v. Cooper, 73 U.S. 247, 252, 8 L.Ed. 851. In Lockerty v. Phillips, 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339, the court said:

"The Congressional power to ordain and establish inferior courts includes the power 'of investing them with jurisdiction either limited, concurrent, or exclusive, and of

withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good'. Cary v. Curtis, 3 How. 236, 245, 11 L.Ed. 576; Lauf v. E. G. Shinner & Co., 303 U. S. 323, 330, 58 S.Ct. 578, 582, 82 L.Ed. 872; Hallowell v. Commons, 239 U.S. 506, 509, 36 S.Ct. 202, 203, 60 L.Ed. 409; Smallwood v. Gallardo, 275 U.S. 56, 48 S.Ct. 23, 72 L. Ed. 152; Toucey v. New York Life Ins. Co., 314 U.S. 118, 129, 62 S.Ct. 139, 141, 86 L.Ed. 100, 137 A.L.R. 967. See, also, United States v. Hudson and Goodwin, 7 Cranch 32, 33, 3 L.Ed. 259; Mayor v. Cooper, 6 Wall. 247, 252, 18 L.Ed. 851; Stevenson v. Fain, 195 U.S. 165, 167, 25 S.Ct. 6, 7, 49 L.Ed. 142; Kentucky v. Powers, 201 U.S. 1, 24, 26 S.Ct. 387, 393, 50 L.Ed. 633, 5 Ann.Cas. 692; Chicot County Drainage Dist. v. Baxter Bank, 308 U.S. 371, 376, 60 S.Ct. 317, 319, 84 L.Ed. 329."

In Kline v. Burke Const. Co., supra, 260 U.S. at page 234, 43 S.Ct. at page 82, 67 L. Ed. 226, 24 A.L.R. 1077, the court said:

"Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution. Turner v. Bank of North America, 4 Dall. 8, 10, 1 L.Ed. 718; United States v. Hudson & Goodwin, 7 Cranch 32, 3 L.Ed. 259; Sheldon v. Sill, 8 How. 441, 448, 12 L.Ed. 1147; Stevenson v. Fain, 195 U.S. 165, 25 S.Ct. 6, 49 L.Ed. 142. The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it. The Mayor v. Cooper, 6 Wall. 247, 252, 18 L.Ed. 851." See also United States v. Messersmith, 7 Cir., 138 F.2d 599, 600.

The Congress in the Fair Labor Standards Act did confer jurisdiction upon the district court to entertain plaintiffs' claims, but Sec. 2(d) of the Portal-to-Portal Act withdrew it. In Kline v. Burke Const. Co., supra, 260 U.S. at page 234, 43 S.Ct. at page 83, 67 L.Ed. 226, 24 A.L.R. 1077, the court also said:

"And the jurisdiction having been conferred may, at the will of Congress, be taken away in whole or in part; and if withdrawn without a saving clause all pending cases though cognizable when commenced must fall. Assessors v. Osbornes, 9 Wall. 567, 575, 19 L.Ed. 748. A right which thus comes into existence only by virtue of an act of Congress, and which may be withdrawn by an act of Congress after its exercise has begun, cannot well be described as a constitutional right." See also Seligman's, Inc. v. United States, D.C., 30 F. Supp. 895, 900, and cases there cited. See Seese v. Bethlehem Steel Co., D.C., 74 F. Supp. 412, 420.

Should Congress undertake to withdraw from the courts jurisdiction to consider and determine pure questions of ownership or title to property unaffected by constitutional provisions, a more serious question would be presented, but we are not confronted here with such a case.

■ The amendments to the complaints must be considered.

As herein indicated, the amendments are grounded upon alleged contract or contracts between defendants and the United States under which defendants agreed to pay plaintiffs wages at the rate of time and one-half the regular rate for overtime work, as set up in the original complaints, and further agreed that they would comply with all federal laws and regulations, including the Fair Labor Standards Act and the regulations issued thereunder. Plaintiffs contend that the amendments aver a cause of action upon contract altogether independent of the Fair Labor Standards Act and the Portal-to-Portal Act. The amendments are vague and uncertain in their averments and are confusing because they were not set out in separate counts of the complaints but were incorporated as a part of the original complaints brought under the Fair Labor Standards Act. Taking the substance of the averments of the contracts as true, we cannot agree that they were entirely independent of the statutes involved. By the very terms of the agreements as alleged, the Portal-to-Portal Act, an amendment to the Fair Labor Standards Act, becomes a part of the contracts. By the contracts defend-

ants agreed to obey all federal laws. It is true enough that one may recover upon a contract to which he is not actually a party, if the contract was executed for and inured to his benefit. But Sec. 2(a) of the Portal-to-Portal Act did not except such a contract from its provisions. The only exception made was, "(1) An express provision of a written or nonwritten contract in effect, at the time of such activity, *between such employee, his agent, or collective-bargaining representative and his employer;* * * *" (Italics ours.)

Further, if the amendments should be regarded as constituting independent causes of action, such actions are no longer class actions because the relief sought is not common to all. Rule 23(a) (3), Rules of Civil Procedure. Each plaintiff has a separate and distinct demand for the compensation due him and there is no allegation that as to him the matter in controversy exceeds the jurisdictional sum or value of $3000.00. Pinel v. Pinel, 240 U.S. 594, 596, 36 S.Ct. 416, 60 L.Ed. 817. See Memorandum Opinion of District Judge Hincks in Tittle v. General Motors Corporation, 80 F.Supp. 333.

Finally, the Portal-to-Portal Act has been declared constitutional in Seese v. Bethlehem Steel Co., supra, by the Court of Appeals of the Fourth Circuit (a co-ordinate jurisdiction to which we accord deference) and by a very large number of the district courts. See also Battaglia v. General Motors Corporation, 169 F.2d 254 and Darr v. Mutual Life Ins. Co., 169 F.2d 262, by the Court of Appeals of the Second Circuit.

The judgments appealed from are affirmed.