**Richard COLVIN, Appellant (Plaintiff Below),**

v.

**Otis BOWEN, Individually and as the Governor of Indiana; Albert P. Tutsie, Individually and as the Chairman of the Indiana Parole Board; Glenn E. Douthitt, Individually and as a member of the Indiana Parole Board; Ruth M. Pappert, Individually and as a member of the Indiana Parole Board; Harland C. Hicks, Individually and as a member of the Indiana Parole Board; John J. Barton, Individually and as a member of the Indiana Parole Board, Appellees (Defendants Below).**

No. P.S. 415.

Court of Appeals of Indiana, Third District.

Feb. 4, 1980.

Richard Colvin, pro se.

Theo. L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellees.

**HOFFMAN, Judge.**

This action for injunctive relief and damages under the Federal Civil Rights Act (42 U.S.C.A. § 1983) was filed in the LaPorte Superior Court by plaintiff-appellant Richard Colvin against Otis Bowen, the Governor of Indiana, and the individuals who comprise the Indiana Parole Board. In his complaint plaintiff alleged that the procedures utilized by the defendants to deny him clemency impinged upon Article 1, § 18 of the Indiana Constitution and violated his Fourteenth Amendment rights under the United States Constitution. Defendants moved to dismiss the suit for lack of subject matter jurisdiction and because the complaint failed to state a claim upon which relief could be granted. In ruling on this motion the trial court issued the following order:

"The Court being duly advised finds:

1. That it lacks jurisdiction to hear and determine this matter.

2. That even assuming it had jurisdiction, the plaintiff has failed to state a cause of action since there is no statutory or constitutional right to clemency, such relief being solely discretionary and therefore, not subject to any procedural safeguards.

"This cause is therefore dismissed."

The issues presented by this appeal include:

(1) whether the trial court erred in declining to assume jurisdiction;

(2) whether the trial court erred in ruling on the defendants' Ind.Rules of Procedure, Trial Rule 12(B)(6) [12(B)(1)] motion after concluding it did not have subject matter jurisdiction over the action; and

(3) whether the trial court erred by not appointing indigent counsel.

It is the plaintiff's contention that unless Congress confers exclusive jurisdiction on the federal courts then the state courts have concurrent jurisdiction to enforce rights created by a federal statute. Indeed the majority view has recognized that state courts do have concurrent jurisdiction over actions arising under § 1983. *New Times, Inc. v. Arizona Board of Regents* (1974), 110 Ariz. 367, 519 P.2d 169; *Brown v. Pitchess* (1975), 13 Cal.3d 518, 119 Cal.Rptr. 204, 531 P.2d 772; *Alberty v. Daniel* (1974), 25 Ill. App.3d 291, 323 N.E.2d 110; *Dudley v. Bell* (1973), 50 Mich.App. 678, 213 N.W.2d 805; *Brody v. Leamy* (1977), 90 Misc.2d 1, 393 N.Y.S.2d 243; *Williams v. Greene* (1978), 36 N.C.App. 80, 243 S.E.2d 156; *Kish v. Wright* (1977), Utah, 562 P.2d 625; *Terry v. Kolski* (1977), 78 Wis.2d 475, 254 N.W.2d 704. While not disputing this majority rule, defendants nevertheless maintain that the trial court has the discretionary power to refuse to invoke jurisdiction. This assertion is erroneous.

"State judges, like judges of the United States, take an oath to support the Constitution of the United States. Article VI, paragraph 2, of the United States Constitution, provides in part:

'This constitution and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding.'

"This constitutional provision not only permits state courts to exercise jurisdiction in enforcement of federal laws, to the extent permitted by Congress, but mandates that federal causes of action and federal rights, unless exclusively reserved to the federal courts, must be enforced by state courts.

\* \* \* \* \* \*

"The ordinary rule, therefore, mandated upon the states is that they and their courts shall enforce the laws of Congress. Only if the Congress has exclusively reserved jurisdiction to the federal courts are state courts without power to act." *Terry v. Kolski, supra,* 254 N.W.2d at 705, 706, 707.

And in *Brown v. Pitchess, supra,* there is the following language:

"The Attorney General's remaining contribution to the discussion is catastrophic metaphor, characterizing the finding of concurrent jurisdiction in this case as having loosed a Johnstown flood of litigation which unless checked promises to inundate the judicial system of this State.

\* \* \* \* \* \*

"This dire prophecy is beside the point, implying as it does that exercise of jurisdiction is discretionary here. To the contrary, the existence of [concurrent] jurisdiction creates the duty to exercise it. (*Gerry of California v. Superior Court* (1948), 32 Cal.2d 119, 122, 194 P.2d 689, 692; see *International Prisoners' Union v. Rizzo* (E.D.Pa.1973), 356 F.Supp. 806, at 810.)"

119 Cal.Rptr. at 207, 531 P.2d at 775.

▉ Thus state courts of general jurisdiction are not free to deny enforcement of claims growing out of a valid federal statute such as § 1983. *See also: Dudley v. Bell, supra; Holt v. City of Troy* (1974), 78 Misc.2d 9, 355 N.Y.S.2d 94.

The LaPorte Superior Court in which the instant action was brought is a court of general jurisdiction. It is vested with jurisdiction to entertain "all cases and actions at law and in equity whatsoever." IC 1971, 33-5-31-4 (Burns Code Ed.). Since the

plaintiff's claim sought damages and equitable relief, the trial court was competent to hear and determine the suit. Accordingly, the trial court was in error when it decided that jurisdiction could not properly be invoked by the state courts.

■ The next question advanced is whether the trial court erred in ruling on the defendants' TR. 12(B)(6) motion after concluding it did not have subject matter jurisdiction over the action. Resolution of this issue is governed by *Cooper et al. v. Bd. of Review* (1971), 150 Ind.App. 232, 276 N.E.2d 533.

"The trial court granted both a Motion to Dismiss for lack of jurisdiction of the subject matter and for failure to state a claim upon which relief could be granted. It properly granted the Motion to Dismiss for lack of jurisdiction of the subject matter, but was without power to adjudicate whether the complaint failed to state a claim upon which relief could be granted. When the trial court determined that it had no jurisdiction over the subject matter of Cooper's case, it had no power to further adjudicate the question of whether or not the complaint stated a claim upon which relief could be granted. *Stewart v. United States*, (1952) (C.A.7) 199 F.2d 517; *Fisch v. General Motors Corp.* (1948) (C.A.6) 169 F.2d 266, cert. denied 335 U.S. 902, 69 S.Ct. 405, 93 L.Ed. 436.

"The judgment of the trial court is therefore moot insofar as it pertains to the Rule T.R. 12(B)(6) Motion to Dismiss." (Footnote omitted.)

276 N.E.2d at 539.

Ordinarily the judgment would be reversed and sent back to the trial court with instructions to proceed in a manner consistent with this opinion. But insofar as the same issue would arise on remand, in the interests of judicial economy and convenience to the parties this Court will adjudicate the merits of the plaintiff's cause of action.

■ To state a cause of action pursuant to § 1983, plaintiff must show that he has been deprived of a constitutionally protected right and that the same was accomplished under color of state law. *Judo, Inc. v. Peet* (1971), 68 Misc.2d 281, 326 N.Y.S.2d 441. At the trial court plaintiff asserted that he was entitled to various procedural safeguards upon his being considered for clemency. The alleged constitutional infirmities of the procedure utilized may be summarized as follows:

(1) lack of access to the institutional file on him;

(2) lack of specific guidelines for reaching a clemency determination;

(3) failure to articulate specific reasons for the denial of clemency other than "seriousness of the offense;" and

(4) lack of opportunity to be heard or to present witnesses on his behalf.

■ Plaintiff's claim raises the threshold question of whether the due process clause applies to clemency proceedings. It is clear that under Indiana law no person has a legitimate claim of entitlement to clemency.

"It should be stated once again that executive clemency, if any, can only be considered to be a matter of grace and is not a right of the convicted felon. It goes without saying that the judicial department cannot interfere with the executive department in the granting or withholding of executive clemency."

*Misenheimer v. State* (1978), Ind., 374 N.E.2d 523, at 532.

In *Murphy v. Indiana Parole Board, et al.* (1979), Ind., 397 N.E.2d 259, the Indiana Supreme Court held that since an inmate of this state has no constitutional or inherent right to parole release, any rights with regard to such release must emanate from the parole release statute itself. The rationale of that decision applies with equal force here because there is no constitutional right to clemency either. Therefore, any procedural safeguards must be derived from the clemency statutes. The following language in *Murphy* is particularly instructive in the disposition of the plaintiff's allegations:

"ISSUE I

The first issue raised by Murphy is whether the Parole Board violated his

due process rights by failing to give adequate and sufficient reasons for the denial of parole. Specifically, he contends that the Board, in merely stating that parole was denied because of the 'seriousness of the offense,' failed to give any factual reasons for the denial, failed to give Murphy any indication of what he should do to make himself a more likely candidate for parole, and overlooked the positive aspects of his record. In support of his argument, he cites several pre-*Greenholtz* [*Greenholtz v. Inmates of Nebraska Penal & Cor.*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668] cases which held that the reason given for denial must be sufficiently specific so as to allow meaningful judicial review. However, those cases were decided under the erroneous assumption that the due process clause is applicable to parole *release* in the same manner as it is applicable to parole revocation. The United States Supreme Court held in *Greenholtz* that an inmate's parole release rights, if any exist, must have their origins within the parole release law of that state. Our Legislature has delegated to the Parole Board the responsibility of determining the conditions of early release, without further specification. We conclude that, when the Parole Board advised Murphy that they were denying early release because of the 'seriousness of his offense,' they correctly stated their reason for the denial. Such advisement met the requirement of procedural due process said to be owing in *Young v. Duckworth, supra*, [1979, Ind., 394 N.E.2d 123].

## "ISSUE II

Murphy's next contention is that the Parole Board violated his due process rights by failing to allow him access to information contained in his institutional file. However, he does not state, nor does the record reflect, that he ever *requested* access to this information. Nor does the record reveal what the Parole Board's policy is with respect to such inmate access, but we can perceive bona fide reasons for denying penal institution inmates such access. Due process permits a weighing of the state's interests of security and inmate management against the interest of the inmate hoping for parole release.

## "ISSUE III

Murphy contends that Ind.Code § 11–1–1–9 (Burns Supp.1978) is unconstitutional in that it fails to give the Parole Board reasonable and adequate guidelines for reaching its parole release determinations. This contention is without merit. Again, quoting from the *Greenholtz* case, the United States Supreme Court, stated that a state's parole release statute may be 'specific or general in defining the conditions for release and the factors that should be considered by the parole authority.' *Id.* at 8, 99 S.Ct. at 2104. Furthermore, the Court stated:

'Here, as we noted previously, the Parole Board's decision as defined by Nebraska statute is necessarily subjective in part and predictive in part. Like most parole statutes, it vests very broad discretion in the Board. No ideal, error-free way to make parole release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of the actual parole decisionmakers in predicting future behavior. Our system of federalism encourages this state experimentation. If parole determinations are encumbered by procedures that states regard as burdensome and unwarranted, they may abandon or curtail parole.' *Id.* at 13, 99 S.Ct. at 2107." (Original emphasis.)

*Murphy* at 8–10.

▉ The statutes governing the granting or denial of clemency, IC 1971, 11–7–4–1 *et*

*seq.* (Burns Code Ed.),[1] do not require the Parole Board to allow a petitioner access to its files on him. Nor is the Board required to promulgate specific guidelines for reaching a clemency determination or to articulate specific reasons for its decision to deny clemency. Finally the Board is not *mandated* to conduct a hearing even though it is empowered to hold one and to subpoena witnesses.

It is an old and familiar principle of constitutional law that one who has no right to demand a certain thing has no right to procedural due process over a decision not to grant it to him. *Board of Regents v. Roth* (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. Consequently, plaintiff's § 1983 claim must fail.

Plaintiff also urges that the trial court erred by not appointing indigent counsel. The record discloses that the plaintiff filed a motion for appointment of attorney and an affidavit of indigency but it was never ruled upon. It is a well-settled principle that there can be no error claimed as to a motion when that motion was never acted upon by the trial court. *Jaudon v. State* (1970), 255 Ind. 114, 262 N.E.2d 851; *Wolf, etc. et al. v. Lang Tr., Inc.* (1965), 136 Ind.App. 571, 203 N.E.2d 308.

Cause remanded with instructions to the trial court to re-enter a judgment for dismissal.

Remanded.

GARRARD, P. J., and STATON, J., concur.

---

1. These statutes were repealed by Acts 1979, P.L. 120, § 22, effective October 1, 1980. For provisions effective October 1, 1980, concerning the Parole Board, see IC 1971, 11–9–1–1—11–9–2–3 (1979 Burns Supp.). Under the new law the petitioner is entitled to a hearing and the opportunity to present witnesses.