520 So.2d 1333 (1987)
Charles A. MARX, Ph.D., Chairman, State Tax Commission & Commissioner of Revenue, State of Mississippi
v.
TRUCK RENTING AND LEASING ASSOCIATION, INC., Ryder Truck Rental, Inc., and Saunders System, Inc.
No. 57130.
Supreme Court of Mississippi.
September 30, 1987.
Rehearing Denied March 16, 1988.
*1335 Gary W. Stringer, Jackson, for appellant.
William N. Reed, J. Brad Pigott, Watkins, Ludlam & Stennis, Jackson, for appellee.
En Banc.
SULLIVAN, Justice, for the Court:
Truck Renting and Leasing Association, Inc., (TRLA), Ryder Truck Rental, Inc., (Ryder), and Saunders System, Inc. (Saunders), plaintiffs, filed a complaint in the Chancery Court of the First Judicial District of Hinds County against Charles Marx, Chairman, State Tax Commission and Commissioner of Revenue for the State of Mississippi seeking declaratory and injunctive relief from Section 27-65-23 of the sales tax portion of the Mississippi Code Annotated (Supp. 1984).
The complaint challenged the statute as violating the Commerce Clause of the United States Constitution and the Due Process Clauses of the United States Constitution and the Mississippi Constitution of 1890. The statute purports to impose a six percent (6%) tax on the gross income of companies renting or leasing transportation equipment located outside the State of Mississippi through rental agreements entered into outside the State of Mississippi.
*1336 The State Tax Commission filed a subsequent motion to dismiss, challenging the jurisdiction of the chancery court to adjudicate the matter. Plaintiffs filed a motion for summary judgment supported by affidavits. A hearing on both motions was held on January 7, 1986, and the chancellor ruled that the statute was unconstitutional as it attempted to tax non-Mississippi leases on non-Mississippi trucks without the occurrence of any transaction by the lessor in the State of Mississippi. The chancellor concluded that he had jurisdiction to adjudicate the matter, and he permanently enjoined the collection, assessment, or levy of taxes under Section 27-65-23. The Tax Commission now appeals this decision assigning the following as error:
I. The lower court erred in finding that appellees' action for both injunctive and declaratory relief was not barred by Mississippi Code Annotated § 27-65-71 (1972);
II. The lower court erred in finding that jurisdiction existed under Mississippi Code Annotated § 11-13-11 (1972), for appellees' action for injunctive relief;
III. The lower court erred in finding that Section 159(f) of the Mississippi Constitution of 1890 vested constitutional jurisdiction in the chancery court to enjoin the collection of Mississippi sales tax;
IV. The lower court erred in finding that an action to enjoin under Miss. Code Ann. § 11-13-11 (1972) was not barred where an adequate remedy at law existed;
V. The lower court erred in finding that appellees' ability to remit the disputed tax and to seek a refund under Mississippi Code Annotated § 27-65-47 (1972) and § 27-65-49 (1972) does not constitute an adequate remedy at law that would bar appellees' action for injunctive and declaratory relief;
VI. The lower court erred in failing to continue, under Rule 56(f) of the Mississippi Rules of Civil Procedure, the hearing on appellees' motion for summary judgment pending completion of discovery by appellant;
VII. The lower court erred in failing to find that genuine issues as to material facts exist that barred the awarding of summary judgment to appellees.
VIII. The lower court erred in finding that the imposition of Mississippi sales tax under Mississippi Code Annotated § 27-65-23 on the income of appellees from non-Mississippi leases of non-Mississippi trucks violates the Commerce Clause of the United States Constitution; and
IX. The lower court erred in finding that the imposition of Mississippi sales tax under Mississippi Code Annotated § 27-65-23 on the income of appellees from non-Mississippi leases of non-Mississippi trucks violates the due process clause of the Fourteenth Amendment of the United States Constitution and the due process clause of the Mississippi Constitution of 1890.
Additionally, TRLA, Ryder and Saunders cross-appeal, assigning the following as error:
I. The chancellor erred in concluding that jurisdiction did not exist under 42 U.S.C. § 1983; and
II. The chancellor erred in concluding that the plaintiffs were not entitled to an award of attorney's fees under 42 U.S.C. § 1988.
TRLA, Ryder and Saunders[1] are challenging the enforceability of § 27-65-23 of the Mississippi Code Annotated (Supp. 1984), which provides as follows:
Upon every person engaging or continuing in any of the following businesses or activities there is hereby levied, assessed and shall be collected a tax equal to six percent (6%) of the gross income of the business, except as otherwise provided: ...
Persons doing business in this state who rent transportation equipment with *1337 a situs within or without the state to common, contract or private commercial carriers are taxed on that part of the income derived from use within this state. If specific accounting is impracticable, a formula may be used with approval of the commissioner.
Plaintiffs allege that they lease trucks domiciled in states other than Mississippi for interstate travel over routes chosen by the lessees or their agents. The leases were entered into outside the State of Mississippi but did result in the equipment traveling through Mississippi on occasion. The plaintiffs complain that the statute imposes an unconstitutional burden on interstate commerce in violation of the Commerce Clause of the United States Constitution because:
(1) It imposed a tax on an activity without a substantial nexus with Mississippi.
(2) It constituted double taxation by more than one state on the same lease income.
(3) Did not permit a fair apportionment among states as to income in value generated from leases.
Under Count II, the plaintiffs allege that the tax attempts to reach transactions beyond the jurisdiction of Mississippi so as to tax values earned outside the State of Mississippi, constituting a deprivation of property without due process of law in violation of both the Constitutions of the United States and that of Mississippi. As the deprivations have been affected by the State Tax Commission under color of state law, plaintiffs assert a claim under 42 U.S.C., § 1983 and seek to have the statute declared unconstitutional pursuant to Rule 57 of the Mississippi Rules of Civil Procedure. They further seek to enjoin the collection, assessment, or levy of the tax pursuant to the equity jurisdiction of the chancery court. Plaintiffs also seek attorneys fees under 42 U.S.C., § 1988.
The State Tax Commission claims that the tax was a sales tax and the plaintiffs were required to pay the tax and then seek a refund as their exclusive remedy pursuant to § 27-65-47 of the Mississippi Code Annotated (1972). The Commission argues further that failure to comply with this statute divested the chancery court of any jurisdiction to adjudicate the matter. Furthermore, the Commission argues that injunctive relief is not a proper remedy in that Section 27-65-71 of the Mississippi Code Annotated (1972), specifically bars any court from granting injunctive relief restraining the collection of sales tax under this chapter.
Under Mississippi Rules of Civil Procedure 12(b) the Commission filed a motion to dismiss arguing that there was an adequate remedy at law through the refund statute and that the chancery court could not invoke its equity jurisdiction to adjudicate the matter.
Plaintiffs filed a motion for summary judgment supported by affidavits. John T. McSoley, Vice President of Saunders, stated that Saunders business primarily involved the leasing of trucks domiciled outside the State of Mississippi and that at best only twenty percent (20%) of their revenue could be attributed to the mileage accumulated by the lessees during the leased term. These leases were entered into outside the State of Mississippi and that Saunders' income from such leases could not be accurately determined based upon the number or locations of mileage accumulated by their individual lessees.
Beverly Walker, the executive director of TRLA, stated that Mississippi was the only state which attempted to tax receipts entered into outside Mississippi borders on trucks domiciled outside the State of Mississippi. The result was a double taxation by more than one state on the income and value generated from the leases. Al Uritis, Sales Tax Manager for Ryder, stated basically the same thing, adding that Ryder derived only 27.4 percent of its revenue from the mileage accumulated during the lease period and that Ryder had paid a substantial sum under the sales taxes.
In response to the motion for summary judgment the Commission filed an affidavit pursuant to Rule 56(f) of the Miss.R.Civ.P. and Charles A. Marx, Chairman, stated for the Commission, that he could not present *1338 affidavits to justify his opposition to the motion because discovery had not been completed. He further responded to the motion for summary judgment denying all allegations in the motion and praying that the court refuse the motion pursuant to Rule 56(f) until such time as discovery could be completed.
On January 24, 1986, Chancellor Joe Moss held that the court was not barred from granting injunctive relief under § 27-65-71 of the Mississippi Code Annotated (1972). The chancellor found that under 159(a) and 159(f) of the Mississippi Constitution of 1890, chancery courts retained jurisdiction over all cases which they had previous jurisdiction over prior to the enactment of the constitution. Section 1831 of the revised Code of 1880 vested jurisdiction over all suits seeking to restrain the collection of taxes without the authority of law in the chancery court. The chancellor further found that this section had subsequently been codified as § 11-13-11 of the Mississippi Code Annotated (1972), and was given constitutional force by virtue of 159(f) of the Constitution. The chancellor held that the tax refund statute did not provide an adequate remedy of law to attack the constitutionality of the challenged statute and therefore the court could properly assert its equity jurisdiction over the matter. He then ruled that the Commission's motion to dismiss the action was not well taken.
Turning to the motion for summary judgment, the chancellor found that the affidavits clearly established that Mississippi was taxing income from non-Mississippi leases of non-Mississippi trucks without the occurrence of any transaction by the lessor in the State of Mississippi. The chancellor added that there was no nexus between the plaintiffs and Mississippi in that the plaintiffs had no plants, sales offices, warehouses, or any physical activity whatsoever within the state. The chancellor ruled that Section § 27-65-23 as it purported to tax income from foreign leases of foreign trucks constituted a burden upon interstate commerce and thereby violated the Commerce Clause of the United States Constitution. The chancellor found that since the Tax Commission had had an adequate opportunity during the preceding five months to conclude discovery in this case but had not and had not sought a stay of discovery, that the Commission could not now rely on Rule 56(f) of the Miss.R.Civ.P. as its sole response to the motion for summary judgment. Therefore, the motion for summary judgment was granted and a separate hearing was set to determine whether or not the plaintiffs were entitled to attorney fees under 42 U.S.C., § 1988. The record does not reflect that the attorney fees hearing was ever held and no attorneys fees were awarded.

I.

THE JURISDICTION QUESTION.
The first five assignments of error deal with the jurisdiction of the chancery court to enjoin or declare unconstitutional this statute. Generally courts of equity are prohibited from enjoining the assessment, appraisal or collection of taxes. Lewis v. Mass Appraisal Services, Inc., 396 So.2d 35 (Miss. 1981); Coulson v. Harris, 43 Miss. 728 (1871). However, injunctive relief is available in cases of equity jurisdiction or when specially authorized by statute. McDonald v. Murphree, 45 Miss. 705 (1871); see also, Stone v. Kerr, 194 Miss. 646, 10 So.2d 845, 847 (1942) (citing and affirming Murphree); State Tax Commission v. Fondren, 387 So.2d 712, 723-24 (Miss. 1980) (equity may enjoin collection of taxes in certain cases). This Court must determine whether either of these bases of injunctive jurisdiction existed in the present case.

A.
Subject matter jurisdiction ... the authority of a court to hear a given case at all  turns on the type of case at issue. Dye v. State, Ex rel. Hale, 507 So.2d 332, 337 (Miss. 1987). Jurisdictionally cases are generally classified by the nature of the primary right asserted or the remedy sought. Against this backdrop we consider the jurisdictional statute, Section 11-13-11, which provides:

*1339 The chancery court shall have jurisdiction of suits by one or more taxpayers in any county, city, town, or village, to restrain the collection of any taxes levied or attempted to be collected without authority of law.
To determine if we have before us a case within chancery court jurisdiction, as defined by § 11-13-11 we turn to the well pleaded allegations of the complaint which, for jurisdictional purposes, are taken as true. In Re City of Ridgeland, 494 So.2d 348, 350 (Miss. 1986); American Fidelity Fire Insurance Co. v. Athens Stove Works, Inc., 481 So.2d 292, 296 (Miss. 1985); Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290-91 (Miss. 1985). When we refer to the complaint, we find that the plaintiffs have sought an injunction to restrain the collection of taxes levied or attempted to be collected without authority of law. Plaintiffs thus appear to have asserted a claim within the subject matter jurisdiction of the chancery court.
Subsequent interpretations of this statute appear to require that:
(1) The aggrieved taxpayer in order to have standing must allege an inadequate remedy at law in his complaint. See Lewis v. Mass Appraisal Services, Inc., 396 So.2d 35-38 (Miss. 1981); (2) that in fact there exists no adequate remedy at law which the taxpayer may avail himself to. See Stone v. Kerr, 194 Miss. 646, 10 So.2d 845 (1942); Fondren v. State Tax Commission, 350 So.2d 1329, 1333-34 (Miss. 1977); (3) that the taxpayers allegations of fact, if proved, warrant a conclusion that the challenged taxes are being levied or collected "without authority of law." Fondren v. State Tax Commission, 350 So.2d 1329, 1334-45 (Miss. 1977).
Although Marx cites and recognizes the holdings in these cases, he nevertheless contends that § 27-65-71 expressly precludes the use of § 11-13-11 as a means of enjoining the collection of sales taxes under the sales tax chapter. See, Miss. Code Ann., § 27-65-71 (1972) [providing "the provisions of Section 11-13-11, Miss.Code Annotated (1972) shall not apply to taxes imposed by this chapter" (§§ 27-65-1, et seq.)]. This same argument was raised in Stone v. Kerr, supra, and the court declined to determine whether Section 430 of the 1930 Code, predecessor to § 11-13-11, vested constitutional authority in chancery courts to enjoin the collection or assessment of taxes pursuant to 159(f) of the Constitution even though the language of Chapter 113, Laws 1938, which like § 27-65-71, expressly exempted the application of Section 430 to that chapter. Stone, 10 So.2d at 846-47. Instead, the court found that the taxpayer had failed to avail himself to an adequate remedy at law, the refund statute provided that the circuit court could refund any portion of the tax which was improperly collected with interest. The court added that the taxpayers' suit involved "a mere irregularity" in the computation of taxes due and that Section 430 required "that the taxes be collected without authority of law" before the chancery court could properly enjoin the tax commission. Stone, 10 So.2d at 848.
Although the court in Stone left unanswered the question concerning the application of 159(f), we are of the opinion that regardless of the constitutional arguments, once a complaint has been filed demanding relief of the sort contemplated by Section 11-13-11, the chancery court has subject matter jurisdiction. If the plaintiff proves his claim the chancery courts not only may, but generally ought to enjoin the collection or assessment of taxes. Section 11-13-11 and its predecessors were passed by the legislature in direct response to the judicial rulings denying chancery courts jurisdiction over matters such as are present in the current case. See Stone v. Kerr, 10 So.2d at 847. [Discussing the reasons for adoption of Section 1831 of the 1880 Code (subsequently codified at Section 420, 1930 Code and Section 11-13-11, Miss. Code Ann., (1972).)] The statute itself is nothing more than a codification of the traditional requirement of equity jurisdiction with the legislatively added requirement that the taxes must be collected without authority of law. This is borne out when one notes the following passage found in State Tax Commission v. Fondren, 387 *1340 So.2d 712 (Miss. 1980), wherein Justice Sugg writing for the court en banc, noted:
We adhere to our former finding and state further that these suits could have been brought in equity absent section 11-13-11 under the maxim, "Equity will not suffer a wrong without a remedy." ... Complainants have suffered a wrong; they are entitled to remedy for this wrong; no adequate remedy exists at law; therefore, they properly invoked the injunctive power of equity to remedy a wrong.
State Tax Commission v. Fondren 387 So.2d at 723-24. In both the Fondren cases, jurisdiction was accepted under Section 11-13-11 because the complainant's case met the previously mentioned requirements of the statute. In the two cases found not within § 11-13-11 jurisdiction was denied, the taxpayer had an adequate remedy at law and therefore did not need the injunctive protection afforded by the statute. See Stone v. Kerr, 194 Miss. 646, 10 So.2d 845 (1942); Lewis v. Mass Appraisal Inc., 396 So.2d 35 (Miss. 1981). If the language of Section 27-65-71 were interpreted to bar the application of § 11-13-11 even though the requirements of the statute had been met, the effect would be to deny the taxpayer any remedy at all for an alleged wrong. Surely, the intent of the legislature was not to create a remedy and subsequently deny it. Thus, we are of the opinion that the language of § 27-65-71 which purports to bar application of § 11-13-11 is only effective if the case fails to meet the legislatively and judicially created requirements necessary to invoke jurisdiction under § 11-13-11.
In the present case TRLA and the other plaintiffs have complied with the requirements of § 11-13-11. First, the complaint specifically alleges that there is an inadequate remedy at law. Further, while TRLA does not specifically cite § 11-13-11 as grounds for jurisdiction, the complaint does include sufficient allegations notifying both the court and opposing party that the case falls within the language of § 11-13-11. See Miss.R.Civ.P. Rule 8(a) and (f) (technical pleadings not required).

B.
The next question to be resolved is whether there was an adequate remedy at law available to TRLA. Marx contends that the refund statute (§ 27-65-47) provides that where there is a dispute as to any tax imposed, the aggrieved taxpayer should pay the taxes and then seek a remittance plus interest for the amounts deemed to be improperly paid. This statute does provide an adequate remedy where there has been an error in the calculation of the taxes to be paid. However, TRLA and the other plaintiffs are not seeking a new calculation of their taxes or challenging the amount of the taxes. Instead, they are contending that the State may not tax them at all because the tax violates the commerce clause. This claim is identical to the claim in Fondren v. State Tax Commission, 350 So.2d 1329 (Miss. 1977), because TRLA does not allege mere error in computing the taxes, rather he alleges a constitutional violation and seeks injunctive relief to prevent "a continuing trespass, injury, or other wrong." Fondren, 350 So.2d at 1334 (citing Stone v. Kerr). The refund statute does not afford adequate relief from alleged constitutional violations and therefore this requirement has been met.

C.
Finally, we must determine whether the allegations, if proved, warrant a conclusion that the taxes are being collected or levied without authority of law. This inquiry does not require a determination as to whether the allegations are in fact true, rather, it simply requires that this Court determine whether the allegations state a claim which, if proved, would entitle the taxpayer to relief. In the present case, if TRLA successfully proves that the challenged statute does violate the commerce clause, undoubtedly they would be entitled to relief and thus injunctive relief under § 11-13-11 is appropriate in this case. Furthermore the chancery court has authority to enjoin the tax commission under its general equity power as provided for by § 159(a) of the Mississippi Constitution (1890). One important maxim of equity *1341 provides "equity will not suffer a wrong without a remedy." This has been construed to vest a taxpayer with a right that the collection of taxes be enjoined where the taxpayer has no adequate remedy at law. See State Tax Commission v. Fondren, 387 So.2d 712, 713-14. We previously noted that the refund statute within the sales tax statute does not provide an adequate remedy at law, and we additionally find that the chancellor also correctly found that he had jurisdiction under the chancery court's general equity powers.

II.

DID THE CHANCELLOR ERR IN FINDING THAT § 27-65-23 VIOLATED THE COMMERCE CLAUSE AND IN GRANTING SUMMARY JUDGMENT FOR PLAINTIFFS?
The remaining assignments of error concern the propriety of the chancellor's granting of summary judgment based upon his finding that the challenged taxing statute violated the Commerce Clause of the United States Constitution.
First, Marx cites Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983), arguing that unless the evidence, when viewed in a light most favorable to the party against whom summary judgment is sought, clearly shows that no material issue of genuine fact exists, then summary judgment is inappropriate. He argues that there is a sufficient issue to withstand a summary judgment motion regarding whether the taxpayers in the present case conducted sufficient business activities within the state to create a "nexus with the state and thus properly subject themselves to the challenged taxing statute." Marx contends that the record conclusively reflects that both Saunders and Ryder engaged in some sort of business activity within the state and points to an order issued by the commission where Saunders was ordered to continue reporting its sales tax liability as it did prior to June 30, 1984, the effective date of the amendment to § 27-65-23 which the taxpayers are attacking in the present suit. Further, he argues that since the tax commission has not developed a formula to use in apportioning the tax, there is a similar question concerning whether the challenged tax discriminates against interstate commerce or is fairly related to the services provided by the state. Accordingly, he urges that the chancellor erred in granting summary judgment.
Additionally, Marx contends that because TRLA and the other plaintiffs had possession of all information regarding their business operations within the state, the amount of sales taxes paid within other states, and the rental agreements used by the companies, summary judgment should have been denied pursuant to Rule 56(f) until such time as discovery could have been completed. He argues that he had not previously submitted to discovery because he had a motion to dismiss pending and until that motion was ruled upon, discovery was of no value.
Finally, Marx argues that the challenged tax statute is constitutional under both the due process and commerce clauses. Citing Complete Auto Transit Company v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), and Mobil Oil Corp. v. Commissioner of Taxes, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), he contends that in order for a statute to withstand a tax on these grounds that statute must satisfy the following test: (1) the tax must be applied to an activity with a substantial nexus with the taxing state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; (4) the tax must be fairly related to services provided by the taxing state. With this in mind, he argues that there is a sufficient nexus with Mississippi because the taxpayers' property is used within the state and thus that property is protected by the state while being used in Mississippi. As to the fair apportionment of the tax, Marx contends that the taxpayer has failed to show by clear and cogent evidence that the formula used in taxing the income is not fairly apportioned and cannot do so because the commission has not developed an apportionment formula to be used under the statute. Further, citing Armco Inc. v. *1342 Hardesty, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984), Marx contends that the taxpayers may not rely on the fact that no other state imposes such a tax as evidence of interstate discrimination.
Finally, citing Commonwealth Edison Co. v. Montana, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981), Marx contends that the measure of the tax in question must be reasonably related to the extent of the contact of the taxpayer to the taxing state. Since the taxpayers use Mississippi highways and the taxes based on the presence of their equipment in the state, Marx asserts that the taxing statute meets the test and the chancellor erred in granting summary judgment as a matter of law because the tax was in fact constitutional.
In response TRLA and the other plaintiffs cite Container Corp. of America v. Franchise Tax Board, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983), and ASARCO, Inc. v. Idaho State Tax Commission, 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982), and argue that states may not tax the value earned outside its borders and since the value tax by Mississippi under this statute is generated from leases entered into outside of Mississippi and is derived from property domiciled outside of Mississippi, the tax in question impermissibly attempts to tax value outside of Mississippi. Further citing Complete Auto Transit, supra, and ASARCO, supra, TRLA contends that there is an insufficient nexus with the state to allow such taxes because they have no plants in the state, employ no sales people within the state, and their only connection with the state comes from lessees of the trucks who travel through the state. In light of this, they argue that the tax in question does not bear any relationship to the presence or activities within the state and again is impermissible.
Additionally, they contend that the tax in question operates as a double taxation on the same income because they are taxed both in the state where the property is domiciled and in Mississippi where it is not domiciled. See Container Corp. of America, supra. Because of this TRLA contends that the tax is discriminatory and may not be fairly apportioned because it cannot reflect a reasonable sense of how income is generated to the taxpayer which the taxing state can properly tax. For these reasons, they argue that summary judgment was appropriate under Rule 56.
Finally, citing Paul Kadair, Inc. v. Sony Corp. of America, 694 F.2d 1017 (5th Cir.1983); SEC v. Spence & Green Chemical Co., 612 F.2d 896 (5th Cir.1980); and Aviation Specialties, Inc. v. United Technologies Corp., 568 F.2d 1186 (5th Cir.1978), they argue that since Marx had a reasonable opportunity to conduct discovery and did not, he may not now claim the protections of Rule 56(f) because he failed to diligently use the various discovery mechanisms available to him. Further, TRLA claims that Marx has failed to articulate any specific material facts not available to him but which were likely to be revealed by discovery and failed to identify any specific facts capable of raising a factual dispute in this case. Accordingly, they argue that summary judgment was appropriate under Rule 56 and that Marx may not now seek to use the protections afforded the diligent litigant under Rule 56(f).
Income of a business operating in interstate commerce is not immune from a fairly apportioned state taxation. Mobil Oil Corp. v. Commissioner of Taxes, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980). However, for a state to tax income generated in interstate commerce, the Due Process Clause of the Fourteenth Amendment and the Commerce Clause of the United States Constitution required that:
(1) The tax must be applied to an activity with a substantial nexus with the taxing state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; (4) the tax must be fairly related to services provided by the taxing state.
See Wardair Canada, Inc. v. Florida Department of Revenue, 477 U.S. 1, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986), [citing Complete Auto Transit Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977)]; see also, Moorman Manufacturing Company *1343 v. Bair, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) [noting the first two prongs of the test quoted above are necessary to satisfy due process requirements.] If the tax sought to be imposed fails any prong of the test, the taxing statute is unconstitutional.
In order to satisfy the minimal connection prong of the test, the corporation being taxed must avail itself to "the substantial privilege of carrying on business within the state." See Mobil Oil Corp., 445 U.S. at 437, 100 S.Ct. at 1231, 63 L.Ed.2d at 520. The taxing power exerted by the state must bear a fiscal relation to protections, opportunities, and benefits given by the state so that the state may properly ask return for what it has given the taxpayer. See ASARCO v. Idaho State Tax Commission, 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982). However, the mere fact that the income is generated outside of the state will not prevent taxation of that income so long as there is a nexus between the tax and the transactions within the state from which the tax is an exaction. See, Mobil Oil Corp., 445 U.S. at 437, 100 S.Ct. at 1231, 63 L.Ed.2d at 520.
A review of the record reflects that neither Saunders nor Ryder operated business facilities within the state, domiciled equipment within the state, stationed employees within the state, or entered into leasing agreements within the state. The only apparent connections with Mississippi are that each corporation is qualified to do business within the state and their equipment on occasion passes through the state via the highway systems. Based upon this, the chancellor concluded that no sufficient nexus existed to justify the tax sought to be imposed by Mississippi. The chancellor was correct in his findings. While it is true that the term "minimal connection" is employed in the test articulated by the Supreme Court, subsequent interpretations have noted that the corporation must "substantially" avail itself to the privilege of doing business in the taxing state. Such language certainly would appear to contemplate greater activities than those present in this case. Further, as the Supreme Court of the United States has pointed out, the inquiry under this prong of the test must focus on the underlying activities conducted within the state and in order for the taxpayer to avoid such taxation he must show that the income tax was earned in the course of activities unrelated to activities conducted within the taxing state. Mobil Oil Corp., 445 U.S. at 441, 100 S.Ct. at 1233, 63 L.Ed.2d at 523. Under the facts presented to this Court, it is apparent that the activities which generate income are in no way related to the activities conducted within the state by the taxpayer. Thus, it would appear on the surface that there was no genuine issue of fact regarding the taxpayers' activities within the state and as a matter of law the taxpayers were entitled to a judgment pursuant to Rule 56.
However, Marx contends that he is unable to refute these allegations because all relevant information regarding the taxpayers activities in Mississippi is within the exclusive knowledge and possession of the taxpayer. Thus, he contends that the chancellor should have denied the motion for summary judgment under Rule 56(f) until such time as discovery could be completed.
Rule 56(f) provides that when a party is unable to produce affidavits to oppose a motion for summary judgment, that party may instead file a motion or affidavit with the court explaining his inability to oppose the motion for summary judgment. In such cases, the court, at its discretion, may, if it finds the reasons offered to be sufficient, postpone consideration of the motion for summary judgment and order among other things that discovery be completed. See 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2728 at 191. The rule itself contemplates that the completion of discovery is, in some instances, desirable before the court can determine whether there is a genuine issue of material fact. See Smith v. H.C. Bailey Companies, 477 So.2d 224 (Miss. 1985). This is especially true where the party seeking to invoke the protections of Rule 56(f) claims the necessary information rests within the *1344 possession of the party seeking summary judgment. However, the party resisting summary judgment must present specific facts why he cannot oppose the motion and must specifically demonstrate "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." United States v. Little Al, 712 F.2d 133, 135 (5th Cir.1983), [citing Securities & Exchange Commission v. Spence & Green Chemical Co., 612 F.2d 896, 901 (5th Cir.1980)]. The party opposing the motion for summary judgment may not rely on vague assertions that discovery will produce needed, but unspecified, facts particularly where there was ample time and opportunity for discovery. Securities & Exchange Commission v. Spence & Green Chemical Co., 612 F.2d 896, 901 (5th Cir.1980); see also, Aviation Specialties, Inc. v. United Technologies Corp., 568 F.2d 1186, 1189 (5th Cir.1978) [failure to conduct discovery where case was on docket for six months bars application of 56(f)]. This is so because Rule 56(f) is not designed to protect the litigants who are lazy or dilatory and normally the party invoking Rule 56(f) must show what steps have been taken to obtain access to the information allegedly within the exclusive possession of the other party. 10A Wright, Miller & Kane, Federal Practice & Procedure, § 2741 at 549. Finally, the determination as to the adequacies of the non-movant's Rule 56(f) affidavits and the decision to grant a continuance or order further discovery rests within the sound discretion of the trial judge and will not be reversed unless his decision can be characterized as an abuse of discretion. Fontenot v. Upjohn Co., 780 F.2d 1190, 1193 (5th Cir.1986).
Based upon the facts in this case, it is our opinion that the chancellor did not abuse his discretion in denying Marx' 56(f) motion. It is clear from the record that some five months went by during which Marx did not attempt to avail himself to the mechanisms of discovery. He sought no orders for production of documents, submitted no interrogatories, and deposed no witnesses or employees of Ryder or Saunders. Further, although he claims to have no information regarding their activities, Marx attempts to show some sort of business activity based upon the fact that the commission attempted to tax Saunders and Ryder in previous years. As the Commissioner of Revenue for the State Tax Commission, Marx certainly would have access to any tax records on both companies regarding state tax withholding of employees within the state, property taxes paid for property owned within the state, or any other such tax record. Marx has not enlightened us regarding what he might reasonably have expected additional discovery to produce nor how any such discovery may save the State's taxing scheme under attack here. In short Marx has failed to demonstrate either to the chancellor or to this Court why an order to complete discovery should be entered and thus he may not now fall back on Rule 56(f).
Although we find that the chancellor was correct in determining that there was an insufficient nexus between the state and the taxpayer to allow them to be taxed consistently with the requirements of due process and the commerce clause, we will nevertheless subject the statute to the remaining prongs of the test.
The second prong requires that the tax be fairly apportioned. The party opposing the tax must show by clear and cogent evidence that the income attributed to the state is in fact out of all appropriate proportions to the business transacted within the state. Container Corp. of America v. Franchise Tax Board, 463 U.S. 159, 170, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545, 556 (1983).
The difficulty in the present case is that Mississippi has no such formula. The statute simply provides that six percent (6%) of the taxpayers' gross sales will be taxed. Nevertheless, it is difficult to conceive how a fair taxing formula could be developed which would be in appropriate proportions to the business transacted within the state where, as in the case here, there is minimal business activity. Admittedly, this is the most difficult aspect of the *1345 case because no formula has been developed. However, the taxing statute need only fail one prong of the test to be held invalid. See Armco Inc. v. Hardesty, 467 U.S. 638, 642, 104 S.Ct. 2620, 2622, 81 L.Ed.2d 540, 545 (1984).
The third prong of the test requires that the tax in question not discriminate against interstate commerce. If the tax causes so called "double taxation" so that an interstate taxpayer is subjected to two taxes on the same income that an intrastate taxpayer would pay one tax on, then the tax is said to be discriminatory. Armco Inc. v. Hardesty, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984). In Armco, out of state manufacturers producing and selling products in West Virginia are forced to pay gross sales receipt tax and a manufacturing tax on products produced in the state while intrastate manufacturers were only subjected to manufacturing tax. Such taxation created double taxation on the intrastate taxpayer and thus was held invalid. Armco, 467 U.S. at 645, 104 S.Ct. at 2624, 81 L.Ed.2d at 547. The statute in this state would appear to create a similar type double taxation. A purely intrastate leasing company of equipment used in Mississippi would have to pay six percent (6%) tax on all its sales. However, an interstate shipping company would not only have to pay six percent (6%) on sales conducted outside of the state it would also have to pay taxes in any number of states in the union. In effect, the income would be taxed twice for the interstate taxpayer whereas similar income of the purely intrastate taxpayer would only be taxed once. Again, this is a difficult question in this case because we do not know what type of formula would be used. However, it is our opinion that such taxation does in fact constitute a discriminatory burden on interstate commerce especially when one considers a limited contact to the state by the aggrieved taxpayers.
Finally, the tax must be fairly related to the services provided by the state. In the present case, unlike Complete Auto Transit, the services provided by Mississippi to Ryder and Saunders are minimal. In Complete Auto Transit, the taxpayer stored trucks in Mississippi which were then used to pick up and carry shipments of new cars to Mississippi auto dealers. In that case, Mississippi provided substantial services to the taxpayer because it protected its property, its employees, and because Complete Auto Transit consistently used the highways of Mississippi to conduct its business. In the present case, neither Ryder nor Saunders have equipment here and do not consistently utilize the Mississippi highways. In fact, they have no control over which highways the lessees of their vehicles use once those vehicles are leased. Thus, from what has been said, it is apparent that the taxing statute clearly fails the first prong of the test. Although the question is not as crystal clear on the remaining prongs of the test, the chancellor was correct in determining that the statute was unconstitutional as a matter of law and therefore we affirm his decision granting summary judgment to TRLA, Ryder, and Saunders.

CROSS-APPEAL

I.

DID THE CHANCELLOR ERR IN DECLINING TO INVOKE JURISDICTION PURSUANT TO 42 U.S.C. § 1983 AND IN FAILING TO AWARD ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988?
Relying on Fair Assessment In Real Estate Association, Inc. v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), TRLA, Saunders, and Ryder contend that 42 U.S.C., § 1983 is an appropriate method of attacking the constitutionality of a state taxing statute and as such the chancellor should have claimed jurisdiction over the cause pursuant to this statute. Further, citing Board of Trustees v. Mississippi Publishers Corp., 478 So.2d 269 (Miss. 1985), and Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), they also argue that they are entitled to an award of attorneys fees in a 1983 action pursuant to 42 U.S.C., § 1988. Accordingly, *1346 they urge that this Court reverse the chancellor's findings on these issues.
In his reply brief, Marx cites State Tax Commission v. Fondren, 387 So.2d 712 (Miss. 1980), cert. denied sub nom. Redd v. Lambert, 450 U.S. 1040, 101 S.Ct. 1757, 68 L.Ed.2d 237 (1981), arguing that the taxpayer had a plain, efficient, and speedy remedy "under state law" and as such a 1983 action could not have been brought in federal court. Since state courts have no more jurisdiction than federal courts in § 1983 actions, Marx concludes that a chancery court properly declined jurisdiction and argues that an award of attorneys fees under § 1988 is only proper in § 1983 actions.
The courts of this State may enforce federally created substantive rights and grant federally authorized remedies. Testa v. Katt, 330 U.S. 386, 388-389, 67 S.Ct. 810, 811-12, 91 L.Ed. 967, 970-71 (1947). The courts of this State have jurisdiction concurrent with that of the federal courts over actions brought under 42 U.S.C., § 1983. Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); see also, Saunders v. Mullins, 412 So.2d 245 (Miss. 1982) (implicitly recognizing the viability of properly pled § 1983 claims in state courts). This includes state court authority to award attorneys fees as a part of costs under the authority of 42 U.S.C., § 1988. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).
In the case of Fair Assessment In Real Estate Association, Inc. v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), the Supreme Court held that state courts had authority to entertain § 1983 actions attacking the constitutionality of a state taxing statute. Fair Assessment essentially eviscerates Fondren, as it is the absence of federal jurisdiction under 28 U.S.C., § 1341 which operates to open the door to the state courthouse so that the taxpayer may there assert his § 1983 claim. A federal courthouse door is closed under such circumstances by 28 U.S.C., § 1341.
We need not consider whether the courts of this State must take and adjudge every § 1983 claim tendered to them. Today's case arises in the context of a trial court adjudication which did decide the § 1983 claim. The chancellor did not expressly label his decision a § 1983 decision but nonetheless he held that the State Tax Commission violated rights secured to the plaintiffs under the Due Process Clause of the Fourteenth Amendment. This is what a § 1983 claim is  a case where a plaintiff proves that state officials acting under color of state law have violated or are threatening to violate rights secured to the plaintiffs by the Fourteenth Amendment. The fact that the statute, 42 U.S.C., § 1983, is not cited per se is of no importance. The chancellor found for the plaintiffs on every essential element of their § 1983 claim.
The chancellor denied the plaintiffs' demand for attorneys fees under 42 U.S.C., § 1988 without reason or hearing. Section 1988, however, provides that the prevailing party in a § 1983 action is ordinarily entitled to attorneys fees on a certain showing. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Our narrow question is whether the chancellor, having decided the § 1983/Fourteenth Amendment Due Process issue in favor of the plaintiffs may then arbitrarily deny plaintiffs a hearing on the question of attorneys fees under § 1988. Both logic and law compel a negative response to this question.
Therefore, we vacate only so much of the chancellor's order as denied the plaintiffs' demand for a hearing for attorneys fees. We remand this case to the chancery court for the limited purpose of affording the plaintiffs a hearing on their § 1988 demand for attorneys fees. In such a hearing we know that the chancellor is not without discretion as to any such award of attorneys fees nor will he be without guidance in the exercise of that discretion as § 1988 has in recent years been one of the most litigated statutes in the United States Code.
We therefore affirm the chancellor on all issues except the hearing on attorneys fees *1347 under 42 U.S.C., § 1988 which we reverse and remand for further hearing.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.
ROBERTSON, J., specially concurs.
DAN M. LEE, J., concurs in part and dissents as to part II without written opinion.
PRATHER, J., not participating.
ROBERTSON, Justice, concurring:

I.
I agree that this case must be remanded for a hearing on taxpayers' application for attorneys fees under 42 U.S.C. § 1988. But there is much more to the subject than meets the eye, and as well more than has met the printed page of the majority opinion. I am disquieted by the loose and unstructured tone of the attorneys fees remand section of the majority opinion. Finally, a few comments are in order upon State Tax Commission v. Fondren, 387 So.2d 712, 722-23 (Miss. 1980), upon which Commissioner Marx relies.

II.

A.
If a right is enforceable, it emanates from some source having authority to provide it and is asserted in some court which may of right be called upon to adjudge it. Courts do in fact exercise discretion regarding enforcement of rights whose enforcement is obligatory, as any good Realistic jurisprude knows. But that is an observation of fact externally made. From within the system the judge called upon to enforce the right knows he ought exercise no more discretion than is built into the right by the law which defines it. Adding a discretion which is not there renders the judicial act subject to legitimate critique and condemnation.
There is a certain air of gratuity about the majority's approach  generally and in this case  to enforcement of the Civil Rights Attorneys Fees Awards Act, 42 U.S.C. § 1988. But make no mistake about it. Courts should not give or withhold at pleasure. See Southern Pacific Co. v. Jensen, 244 U.S. 205, 220, 37 S.Ct. 524, 530, 61 L.Ed. 1086, 1100 (1917) (Holmes, J., dissenting); Educational Placement Services v. Wilson, 487 So.2d 1316, 1318 (Miss. 1986). The Civil Rights Attorneys Fees Awards Act is as much a part of the law of this state as if it were contained in those greenbacked volumes entitled Mississippi Code 1972 Annotated populating the shelves of every law office in the state. Indeed, Section 1988 has greater standing than Mississippi law for priority is accorded it by the Constitution of the United States.
It is my view that the Chancery Court was obligated to hear and adjudge Plaintiffs' properly pleaded claim under 42 U.S.C. § 1983. Here Plaintiffs sued on three theories: Commerce Clause, Federal Due Process/42 U.S.C. § 1983, and State Due Process. The Chancery Court had no more authority to decline adjudication of the Federal Due Process/42 U.S.C. § 1983 claim than a circuit court would have to decline adjudication of warranty claims because plaintiff had also pleaded strict liability and negligence.
Beyond that, once Plaintiffs were held to have succeeded on their Federal Due Process/Section 1983 claim, the Chancery Court became obligated to hear and decide the attorneys' fees claim under 42 U.S.C. § 1988, relief under which is not nearly so discretionary as the majority implies.
Because the majority grasps these points loosely at best, I write separately. I begin with a primer on state court enforcement of federally created rights.

B.
The Supremacy Clause of the Constitution of the United States, Article VI, § 2, provides that all valid enactments of Congress shall be the supreme law of the land.
And the Judges of every State shall be bound thereby, anything in the Constitution *1348 or Laws of any State to the contrary notwithstanding.
The framers of the Constitution contemplated that state courts would have concurrent jurisdiction with federal courts in the enforcement of federally created rights. Hamilton, The Federalist Papers, No. 82.
The Supreme Court has recognized time and time again that state courts have the duty to enforce federally created rights. Claflin v. Houseman, 93 U.S. (3 Otto) 130, 136-37, 23 L.Ed. 833 (1876); Mondou v. New York, N.H. & H.R. Co., 223 U.S. 1, 55-58, 32 S.Ct. 169, 177-78, 56 L.Ed. 327, 348-49 (1912); Testa v. Katt, 330 U.S. 386, 389-91, 67 S.Ct. 810, 812-13, 91 L.Ed. 967, 970-71 (1947); Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 507, 82 S.Ct. 519, 522, 7 L.Ed.2d 483, 487 (1962). A state court may not refuse to enforce a right arising under a statute of the United States because it may disagree with that statute or question the wisdom of Congress in the enactment of that statute. Minneapolis & St. Louis Railroad Co. v. Bombolis, 241 U.S. 211, 222, 36 S.Ct. 595, 598, 60 L.Ed. 961, 965 (1916).
This Court has recognized, as a general proposition, that this state's courts exercise concurrent jurisdiction with federal courts in the enforcement of federally created rights. The only exceptions to this rule are those cases in which the federal statutes expressly provide for exclusive jurisdiction in the federal courts. Koehring Co. v. Hyde Construction Co., Inc., 254 Miss. 214, 229, 178 So.2d 838, 842-43 (1965); Masonite Corp. v. International Woodworkers of America, AFL-CIO, 215 So.2d 691, 696 (Miss. 1968); Lewis v. Delta Loans, Inc., 300 So.2d 142, 144-45 (Miss. 1974). The courts of this state are not free to refuse adjudication of claims brought under the Constitution and laws of the United States. Indeed, we enforce such rights even when convinced that their federal source has erred greatly. Sanders v. State, 429 So.2d 245, 248, 251 (Miss. 1983); Bolton v. City of Greenville, 253 Miss. 656, 666, 178 So.2d 667, 672 (1965). If the ordinary jurisdiction of the state court is adequate to the case, the court must accept jurisdiction and proceed to enforce federally created rights. Lewis v. Delta Loans, Inc., 300 So.2d 142, 144-45 (Miss. 1974).
This Court has in fact recognized the duty and obligation of the courts of this state to enforce rights created under federal statutes:
(a) Fair Labor Standards Act: Mengel v. Ishee, 192 Miss. 366, 4 So.2d 878 (1941);
(b) Carmack Amendment to Interstate Commerce Act: Illinois Central Railroad Co. v. Terry, 137 Miss. 371, 380-81, 102 So. 391 (1924);
(c) Federal Employees Liability Act: Illinois Central R.R. Co. v. Coussens, Admx., 223 Miss. 103, 77 So.2d 818 (1955);
(d) Jones Act: Larry v. Moody, 242 Miss. 267, 274, 134 So.2d 462, 464 (1961); Standard Products, Inc. v. Patterson Admx, 317 So.2d 376, 378 (Miss. 1975); Penrod Drilling Co. v. Bounds, 433 So.2d 916, 928-29 (Miss. 1983) (Robertson, J., concurring);
(e) Labor Management Relations Act of 1947: Masonite Corp. v. International Woodworkers of America, AFL-CIO, 215 So.2d 691, 695 (Miss. 1968);
(f) Truth in Lending Act: Brown v. Credit Center, Inc., 444 So.2d 358, 366 (Miss. 1983); Lewis v. Delta Loans, Inc., 300 So.2d 142, 144-45 (Miss. 1974);
(g) Contract Settlement Act: Walsh Construction Co. v. Davis, 204 Miss. 509, 37 So.2d 757 (1948).

C.
The majority correctly acknowledges that state courts have concurrent jurisdiction with the federal courts over claims brought under 42 U.S.C. § 1983 for violations of rights secured by the Constitution and laws of the United States. Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Absent some federally imposed limitation of the Section 1983 action, the courts of the State of Mississippi have subject matter jurisdiction thereof  concurrent with the courts of the United States. State Tax Commission v. Fondren, 387 So.2d *1349 712, 723 (Miss. 1980). When Mississippi courts are enforcing rights created under federal law, the Mississippi courts must follow the interpretations of those rights provided by federal courts. Illinois Central Railroad Co. v. Coussens, Admx., 223 Miss. 103, 113, 77 So.2d 818, 821 (1955); Saunders v. Mullins, 412 So.2d 245 (Miss. 1982).
Prerequisite to a claim for attorneys fees under Section 1988 is successful prosecution of an action for violation of rights secured by the Fourteenth Amendment, vindication of which is authorized by 42 U.S.C. § 1983. To be sure, this Court has heretofore recognized, at least implicitly, that Section 1983 suits may be brought in state court, although the recognition has at best been tentative. State Tax Commission v. Fondren, 387 So.2d 712, 723 (Miss. 1980); Saunders v. Mullins, 412 So.2d 245, 246 (Miss. 1982). Today's is the first Section 1983 claim success upon which we have affirmed.
That we not feel lonely about what we have done, I offer the following citations wherein courts of other states have freely accepted jurisdiction of claims brought under Section 1983. Alabama: Terrell v. City of Bessemer, 406 So.2d 337, 340 (Ala. 1981); Alaska: Fairbanks Correctional Center Inmates v. Williamson, 600 P.2d 743, 747 (Alaska 1979); Arizona: New Times, Inc. v. Arizona Bd. of Regents, 110 Ariz. 367, 374, 519 P.2d 169, 176 (1974) (en banc); Arkansas: Burden v. Hayden, 275 Ark. 93, 96, 627 S.W.2d 555, 557 (1982); California: Brown v. Pitchess, 13 Cal.3d 518, 521-23, 119 Cal. Rptr. 204, 206-07, 531 P.2d 772, 774-75, (1975) (en banc); Colorado: Espinoza v. O'Dell, 633 P.2d 455, 460 n. 2 (Colo. 1981) (en banc), cert. dismissed, 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982); Connecticut: Vason v. Carrano, 31 Conn. Supp. 338, 338, 330 A.2d 98, 98-99 (Super.Ct. 1974); Delaware: Slawik v. State, 480 A.2d 636, 640 (Del. 1984); District of Columbia: Long v. District of Columbia, 469 F.2d 927, 937 (D.C. Cir.1972); Georgia: Davis v. City of Roswell, 250 Ga. 8, 9, 295 S.E.2d 317, 318-19 (1982); Hawaii: Makanui v. Dept. of Education, 721 P.2d 165 (Hawaii 1986); Idaho: Herrera v. Conner, 111 Idaho 1012, 729 P.2d 1075 (1986); Illinois: Alberty v. Daniel, 25 Ill. App.3d 291, 294-95, 323 N.E.2d 110, 113-14 (1974); Indiana: Colvin v. Bowen, 399 N.E.2d 835, 837-38 (Ind. Ct. App. 1980); Iowa: Blessum v. Howard County Bd. of Supervisors, 295 N.W.2d 836, 844 (Iowa 1980); Kansas: Cooper v. Hutchinson Police Dep't., 6 Kan. App.2d 806, 807-08, 636 P.2d 184, 185-86 (1981); Kentucky: Scott v. Campbell County Bd. of Educ., 618 S.W.2d 589, 590 (Ky.App. 1981); Louisiana: Ricard v. State, 390 So.2d 882, 883-84 (La. 1980); Maine: Thiboutot v. State, 405 A.2d 230, 235 (Me. 1979), aff'd sub nom. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); Maryland: De Bleecker v. Montgomery County, 48 Md. App. 455, 459, 427 A.2d 1075, 1077 (1981), rev'd on other grounds, 292 Md. 498, 438 A.2d 1348 (1982); Massachusetts: Santana v. Registrars of Voters, 384 Mass. 487, 492, 425 N.E.2d 745, 749 (1981); Michigan: Dickerson v. Warden Marquette Prison, 99 Mich. App. 630, 634, 298 N.W.2d 841, 843 (1980); Minnesota: Sweeney v. Special School Dist. No. 1, 368 N.W.2d 288, 291-92 (Minn. Ct. App. 1985); Missouri: Shapiro v. Columbia Union Nat'l Bank & Trust Co., 576 S.W.2d 310, 315-16 (Mo. 1978) (en banc), cert. denied, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979); Montana: Ronek v. Gallatin Co., 740 P.2d 1115 (Mt. 1987); Nevada: Edgar v. Wagner, 101 Nev. 226, 699 P.2d 110 (1985); New Hampshire: MBC, Inc. v. Engel, 119 N.H. 8, 10, 397 A.2d 636, 637 (1979); New Jersey: Endress v. Brookdale Community College, 144 N.J. Super. 109, 132, 364 A.2d 1080, 1092 (1976); New Mexico: Gomez v. Board of Educ., 85 N.M. 708, 710-11, 516 P.2d 679, 681-82 (1973); New York: Felder v. Foster, 107 Misc.2d 782, 783-84, 436 N.Y.S.2d 675, 677 (Sup.Ct. 1981); North Dakota: Kristensen v. Strinden, 343 N.W.2d 67, 69-71 (N.D. 1983); Ohio: Jackson v. Kurtz, 65 Ohio App.2d 152, 156-57, 416 N.E.2d 1064, 1067 (1979); Oklahoma: Powell v. Seay, 553 P.2d 161, 164 (Okla. 1976); Oregon: Rosacker v. Multnomah County, 43 Or. App. 583, 587, 603 P.2d 1216, 1218 (1979); Pennsylvania: Commonwealth ex rel. Saunders v. *1350 Creamer, 464 Pa. 2, 4 n. 3, 345 A.2d 702, 703 n. 3 (1975); Rhode Island: Carvalho v. Coletta, 457 A.2d 614, 617 (R.I. 1983); South Dakota: Eischen v. Minnehaha County, 363 N.W.2d 199 (S.D. 1985); Texas: Myers v. Adams, 728 S.W.2d 771 (Texas 1987); Utah: Maddocks v. Salt Lake City Corp., 740 P.2d 1337 (Utah 1987); Vermont: Beauregard v. City of St. Albans, 141 Vt. 624, 626-27, 450 A.2d 1148, 1149 (1982); Washington: Kuehn v. Renton School Dist. No. 403, 103 Wash.2d 594, 597-98, 694 P.2d 1078, 1080 (1985) (en banc); West Virginia: Harrah v. Leverette, 165 W. Va. 665, 271 S.E.2d 322, 332 (1980); Wisconsin: Terry v. Kolski, 78 Wis.2d 475, 496-97, 254 N.W.2d 704, 712 (1977); Wyoming: Board of Trustees v. Holso, 584 P.2d 1009, 1017 (Wyo. 1978).
But the point is that we "must", not "may", accept and adjudicate the Section 1983 claim. Once it was established that this case fell within the subject matter jurisdiction of the Chancery Court  a point the majority analyzes quite correctly, I do not consider that the Chancery Court had authority to refuse to adjudicate the Section 1983 claim. See Terrell v. City of Bessemer, 406 So.2d at 340 ("[C]ourts of this state must accept jurisdiction over claims brought under 42 U.S.C. § 1983, if a Section 1983 plaintiff selects a state court as his forum."); Brown v. Pitchess, 13 Cal.3d at 523, 119 Cal. Rptr. at 207, 531 P.2d at 775 (In Section 1983 cases "`the existence of [concurrent] jurisdiction creates the duty to exercise it'") (quoting Gerry of Cal. v. Superior Court, 32 Cal.2d 119, 122, 194 P.2d 689, 692 (1948)); Colvin v. Bowen, 399 N.E.2d at 837 ("[S]tate courts of general jurisdiction are not free to deny enforcement of claims growing out of a valid federal statute such as Section 1983."); Felder v. Foster, 107 Misc.2d at 783-84, 436 N.Y.S.2d at 677 ("This court has jurisdiction to entertain all proceedings brought under sections 1983 and 1988 ... and must exercise that jurisdiction when such a proceeding is properly before it... .") (citations omitted); Terry v. Kolski, 78 Wis.2d at 496-97, 254 N.W.2d at 712 ("[C]ourts of this state have jurisdiction to hear and decide Section 1983 cases. In addition, they have an affirmative obligation under the Constitution of the United States to take jurisdiction... ."). I find nothing in Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. ___, 107 S.Ct. 1722, 1729-30, 95 L.Ed.2d 209, 222 (1987) explaining why my view might be in error.

III.
Commissioner Marx relies upon State Tax Commission v. Fondren, 387 So.2d 712, 723 (Miss. 1980), in support of the proposition that the state courts have no authority to entertain claims under Section 1983 where the suit is one seeking to enjoin unconstitutional state action with regard to the collection of taxes. The majority well recognizes that much of the wind has been taken from Fondren's sails by Fair Assessment In Real Estate Association, Inc. v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). I think it important to demonstrate just why the Section 1983/1988 discussion in Fondren is not only wrong  but absurd.
Fondren confuses a federal jurisdictional limitation, 28 U.S.C. § 1341, with the enforceability of a federally created right and remedy in state court. Without supporting authority or logic, Fondren denies state court relief under Section 1983, not because taxpayers' allegations or proof would have failed in federal court, but because the federal court would have been without jurisdiction to hear the case. Commissioner Marx repeats the argument here.
Section 1341, commonly known as the Tax Injunction Act, provides
The [U.S.] district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state.
In Bland v. McHann, 463 F.2d 21 (5th Cir.1972), the Court of Appeals held that Mississippi would afford taxpayers a plain, speedy and efficient remedy.
Via Section 1341 the Congress deprived the federal courts of jurisdiction of state tax matters out of deference to the state's *1351 prerogative to have such matters decided by state tribunals. But "such matters" include all federal statutory and constitutional claims the taxpayer may have. Only where the state courts will vindicate federally created and otherwise applicable rights is the state's remedy deemed adequate. Green v. Klinkofe, 422 F. Supp. 1021, 1026 (N.D.Ind. 1976); Edwards v. Transcontinental Gas Pipe Line Corp., 464 F. Supp. 654, 660 (M.D.La. 1979).
Fondren held that the courts of this state would not vindicate taxpayers' federally created rights, not because taxpayers failed to prove their case under the Fourteenth Amendment/Section 1983  or their entitlement to an award of attorneys fees under 42 U.S.C. § 1988  but because the federal courts would not have had subject matter jurisdiction of the case. I repeat: the reason the federal courts do not have jurisdiction is that the state courts do have such jurisdiction. See Taylor, Section 1983 In State Court: A Remedy For Unconstitutional State Taxation, 95 Yale L.J. 414, 429 (1985).
The true irony of Fondren is that, to the extent it is viable, federal jurisdiction is created. Were Fondren good law, it could not be said that the Mississippi remedy was adequate within the meaning of 28 U.S.C. § 1341. The vitality of Bland v. McHann, 463 F.2d 21 (5th Cir.1972), and indeed of Fair Assessment has always depended upon the Mississippi courts doing their part  recognizing and enforcing federally created constitutional and statutory rights. Where those federal rights are not enforced by state courts, Section 1341 ceases to be a bar to federal jurisdiction. Green v. Klinkofe, 422 F. Supp. 1021, 1026 (N.D. Ind. 1976); Edwards v. Transcontinental Gas Pipe Line Corp., 464 F. Supp. 654, 660 (M.D.La. 1979); Kistner v. Milliken, 432 F. Supp. 1001, 1005 (E.D.Mich. 1977). See generally, Taylor, Section 1983 In State Court: A Remedy For Unconstitutional State Taxation, 95 Yale L.J. 414, 428-32 (1985).

IV.
Finally, though Section 1988 is worded in discretionary language, authoritative judicial construction establishes that denial of fee awards to successful plaintiffs should be the rare exception, not the rule. Absent special circumstances, a prevailing plaintiff should be awarded Section 1988 fees as a matter of course. Vaughner v. Pulito, 804 F.2d 873 (5th Cir.1986); Kirchberg v. Feenstra, 708 F.2d 991 (5th Cir.1983); White v. South Park Independent School District, 693 F.2d 1163 (5th Cir.1982). Because Congress believed that the incentive of attorney's fees was critical to the enforcement of the civil rights' law, Section 1988 requires an extremely strong showing of special circumstances to justify a denial of fees. Kirchberg, 708 F.2d at 998.
A fees award should not necessarily be reduced simply because the plaintiff failed to prevail on every contention in the lawsuit. Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). An attorney's fee award under Section 1988 is not required to be proportionate to the amount of damages plaintiffs actually recover, thus, a fee award some seven times the amount of compensatory and punitive damages awarded is not precluded. City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).
The Fifth Circuit test of "prevailing party" status is whether the plaintiff prevailed on the central issue by acquiring the primary relief sought. A Section 1988 fee award should not be reduced simply because the jury awarded only nominal damages and the plaintiff succeeded against only one of three defendants. Cobb v. Miller, 818 F.2d 1227 (5th Cir.1987). See also Webb v. Bd. of Educ. of Dyer County, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) Time spent on "optional administrative proceedings" may be compensable under Section 1988 if the work was both useful and of a type ordinarily necessary to advance the... litigation to the point where the party succeeded; and Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (fifty percent upward adjustment in fee award is permissible but only in rare case where fee applicant offers *1352 specific evidence that quality was superior and that success was exceptional).
These points made, I concur in the judgment we announce this day, and in much of what has been said by the majority en route.
PRATHER, J., not participating.
NOTES
[1] TRLA is a non-profit corporation organized in the District of Columbia whose members are primarily trucking businesses engaged in renting and leasing trucks. Ryder is a national truck renting corporation qualified to do business in Mississippi. Its principal place of business is in Miami. Saunders is also a national truck rental corporation qualified to do business in Mississippi with its principal place of business in Birmingham, Alabama.