769 So.2d 838 (2000)
J. Robert HOBGOOD, Appellant,
v.
KOCH PIPELINE SOUTHEAST, INC., Appellee.
No. 1999-CP-00392-COA.
Court of Appeals of Mississippi.
March 21, 2000.
Rehearing Denied May 16, 2000.
*839 J. Robert Hobgood, Appellant, pro se.
Harry R. Allen, Gulfport, James L. Halford, Jackson, Attorneys for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. A pipeline company owning an easement brought suit for an injunction to prevent the landowner from interfering with replacement and use of the pipeline. The landowner counterclaimed for trespass and damages. What was labeled a partial summary judgment was entered, granting the pipeline company an injunction to permit full use of the easement. As to the counterclaim, the court ruled that it was inadequately-pled but that the defendant would have thirty days to amend. Absent an amendment, the counterclaim would then be dismissed as well.
¶ 2. The landowner filed a notice of appeal without accepting the trial judge's invitation to amend. On appeal the landowner alleges that the easement was improperly interpreted to permit upgrading, that he is entitled to damages, that his due process rights have been violated, and that the pipeline must be buried more deeply. We initially hold that by not amending the defendant elected to stand on his original counterclaim. That election converted the *840 partial summary judgment into a complete resolution of all issues and thereby a final judgment. We find no error and affirm.

FACTS
¶ 3. J. Robert Hobgood, a resident of Houston, Texas, inherited the property in question from his mother, who in 1941 granted to Koch's predecessor in interest, United Gas Pipe Line Company, an easement to build a pipeline for transporting natural gas. In 1942, Mrs. Hobgood gave United a new easement for a second pipeline. A 1958 agreement amended the first two easements and allowed for a third pipeline. Each document was executed by Hobgood's mother and duly recorded in the Harrison County land records. Pursuant to the 1941 and 1942 agreements, United built two twelve-inch pipelines. Part of the consideration for the easements was the right of those living on the property to tap into them to obtain natural gas for household use. That agreement was honored.
¶ 4. The 1941 and 1942 easements, as amended by the 1958 agreement, conveyed to the grantee and its successors the right to construct, maintain and operate pipelines, with the right of ingress and egress to permit enjoyment of those rights, and to allow for replacement of the pipelines. The 1958 agreement directed United to pay the Hobgoods one dollar per lineal rod for any additional pipeline. Under this agreement, United built a third pipeline in close proximity to the 1941 pipeline. The 1941 and 1958 pipelines were still in operation when this lawsuit was filed.
¶ 5. Koch Pipeline Southeast, Inc. succeeded to United's rights to the 1941 pipeline. Koch notified Hobgood that it intended to begin replacing that line with a new, twelve-inch steel pipeline to be constructed, operated and maintained within the governing regulations set by the Federal Energy Regulatory Commission. The substance to be transported through the new pipeline is wet natural gas containing liquefiable components which later will be separated and processed into propane, butane and ethane. Koch committed to provide residents of the property with dry natural gas for household purposes from another pipeline. Hobgood instructed Koch not to come on his property to construct the replacement pipeline. Koch sought an injunction so that it could proceed.
¶ 6. Koch was granted a temporary restraining order. On February 12, 1999, the court granted Koch's motion for summary judgment. The judgment granted all of Koch's requested relief, dismissed Hobgood's counterclaim for his own injunction and to find a trespass. The court then stated that because "the matter was inexpertly pled and not otherwise addressed in any other pleadings by either party," it would not yet dismiss Hobgood's counterclaim for damages. Instead, the court allowed Hobgood thirty days from the date of judgment to file an amended counterclaim for damages. Hobgood did not file an amendment, but instead on February 22, 1999, he filed a Motion for Rehearing and Trial. This was denied by the court in an order dated May 17, 1999. That is the last order issued by the trial court.
¶ 7. Hobgood, a former attorney in Texas, appeals pro se from this judgment.

DISCUSSION

I. Existence of a Final Judgment
¶ 8. Before the issues raised by Hobgood can be considered, we must decide whether the appeal is properly before us. The decision from which this appeal was taken is entitled "Partial Summary Judgment." It completely resolved the issues on Koch's complaint, but left open for thirty days Hobgood's right to amend his counterclaim to state a proper cause of action for damages. Hobgood's motion for reconsideration of that judgment was denied.
*841 ¶ 9. No amended complaint was filed, but neither was there entered an order dismissing the counterclaim because of that failure. No entry of a final judgment was sought as to the claims that were resolved. M.R.C.P. 54(b). No approval for an interlocutory appeal was obtained. M.R.A.P. 5(a). We have an acceptance in fact by both parties that the matter is ripe for our consideration. We must determine if in law that is true.
¶ 10. Absent permission requested and granted for an interlocutory appeal, an appellant may only seek review of a final judgment. LUTHER T. MUNFORD, MISSISSIPPI APPELLATE PRACTICE (1997) § 6.1. A partial summary judgment is of course not an adjudication of all the claims. See M.R.C.P. 54(b). The procedural requirements for an interlocutory appeal were not followed.[1] M.R.A.P. 5(a)-(c); MUNFORD, APPELLATE PRACTICE, §§ 4.3-4.4.
¶ 11. When a violation of an appellate rule has occurred, we may suspend the effect of that rule "in the interest of expediting decision, or for other good cause"; however, suspension may not waive "the time for taking an appeal" under either Appellate Rule 4 or 5. M.R.A.P. 2(c). An interlocutory appeal requires the filing of a petition with the trial court within fourteen days, seeking the right to appeal from a non-final order. The summary judgment was dated February 12; the notice of appeal was filed February 25, but no petition arguing the reasons for granting an interlocutory appeal was then or ever filed. Would suspending the rules here constitute a waiver of the time for taking the appeal or only a waiver of the intricacies of the method? If the threshold requirement for suspending the rules here is only that something has been filed that seeks an appeal, that occurred. The notice was filed less than 14 days after the judgment. The wrong form of appeal was filed within the time for the correct form of appeal.
¶ 12. This Court at least twice has concluded that we may suspend the rules for interlocutory appeals even when no petition for such an appeal has been filed. Ann May Enterprises, Inc. v. Caples, 724 So.2d 1127, 1130 (Miss.Ct.App.1998); McGriggs v. Montgomery, 710 So.2d 886, 888 (Miss.Ct.App.1998). We find only one decision in which the supreme court permitted a suspension of the rules for interlocutory appeals, saying without elaboration that a criminal defendant had "perfected this interlocutory appeal through imperfect process." Keyes v. State, 708 So.2d 540, 542 (Miss.1998).
¶ 13. We need not decide what short of the steps taken in this case may be necessary to pass the threshold for suspension purposes. We find that the reasons for permitting an interlocutory appeal exist to decide this appeal now will significantly "advance the termination of the litigation and avoid exceptional expense to the parties" that would be occasioned by dismissing the appeal. M.R.A.P. 5(a). Since a notice of appeal under Rule 4 was filed within the deadline for filing a petition requesting an interlocutory appeal under Rule 5, suspending the rules here does not constitute an improper extension of the time for taking an interlocutory appeal. We are only waiving the intricate procedural obligations on the party seeking such an appeal.
¶ 14. The imperfections of the procedures followed by the appellant create an additional problem. If this is an interlocutory appeal, this means that part of the suit is still pending in the trial court. We are faced with determining what if anything is pending. The partial summary judgment of February 12, 1999, gave in *842 effect a Rule 12(b)(6) dismissal. M.R.C.P. 12(b)(6) (rule applies to any "claim, counterclaim, cross-claim, or third-party claim...."). The court found that no proper counterclaim for damages was pled. Instead of dismissing outright, the court gave Hobgood thirty days to amend. That in fact was required, as Rule 15 states that upon granting a 12(b)(6) motion the trial court must permit an amendment within thirty days. M.R.C.P. 15(a).
¶ 15. What if nothing thereafter occurs? The official comment to Mississippi Rule 12 states that if a complaint or a counter-claim "is dismissed with leave to amend and no amendment is received, the dismissal is a final judgment and is appealable" unless other claims remain unresolved. M.R.C.P. 12 cmt. To be precise, though, the judge here did not dismiss with leave to amend. He announced that he would dismiss unless an adequate amendment was received. We find this to be an unimportant distinction. In neither situation is the order on its face final; instead it is contingent with an obvious result upon failure of that contingency.
¶ 16. We find no interpretation of this exact point from the Mississippi Supreme Court, though the already quoted comment from Rule 12 is close. We have found a persuasive statement from a federal appellate court. The district judge found that fraud was not properly pled in a complaint; instead of dismissing, he granted leave to amend. The order said that if no amendment was filed in thirty days, "the court will entertain a renewed motion to dismiss." Shapiro v. UJB Financial Corp., 964 F.2d 272, 278 (3d Cir.1992). The plaintiffs never amended nor did the trial court ever formally dismiss. The plaintiffs did, however, announce that they would not amend. Id. The appellate court said that it was clear that the trial court would dismiss any claims not amended. The court reasoned that to reject the appeal because of the failure to have a formal dismissal of the complaint would elevate form over substance: "once the amendment period expired, the district court's order had the effect of dismissing the improperly pleaded claims with prejudice." Id.
¶ 17. We adopt that analysis here. The trial court announced that it would dismiss without prejudice the counterclaim unless it was amended within thirty days. No amendment was made, and the party whose claim was to be dismissed instead appealed. That is the equivalent of announcing that it would stand on the claim as drafted.
¶ 18. When a party is given an opportunity to amend and the trial court has stated that dismissal will occur otherwise, the failure to amend and the seeking of an appeal abandons the opportunity. Once the thirty days passed and Hobgood pursued his appeal, the partial summary judgment, partial only because the opportunity to amend remained open, became a complete and final judgment. Hobgood's counterclaim was therefore dismissed without prejudice.
¶ 19. The appellant made his procedural bed and may not complain that it is untidy. No harm to the appellee appears from our implication that what should have been done was done. In fact, neither party objects on this appeal. Nonetheless, this Court must assure itself of its own appellate jurisdiction. We find that permitting this appeal to proceed is within our authority.

II. Interpretation of the Granting Clause of the Easement.
¶ 20. The 1941 easement granted to Koch's predecessor in interest the following rights:
... the right of way and easement to construct, maintain and operate pipe lines and appurtenances thereto, and to construct, maintain and operate telegraph and telephone lines in connection therewith, together with the necessary poles, guy wires and anchors, over and through the following described lands *843 situated in Harrison County, State of Miss.....
... To have and to hold unto said Grantee, its successors and assigns, so long as such lines and appurtenances thereto shall be maintained, with ingress to and egress from the premises, for the purpose of constructing, inspecting, repairing, maintaining, and replacing the property of Grantee above described, and the removal of such at will, in whole or in part.
The said Grantor is to fully use and enjoy the said premises, except for the purpose hereinbefore granted to the said Grantee, which hereby agrees to bury all pipes to a sufficient depth so as not to interfere with cultivation of soil, and to pay any damage which may rise to growing crops or fences from the construction, maintenance and operation of said pipe, telegraph and telephone lines.... Should more than one pipe line be laid under this grant at any time, the sum of twenty-five cents per lineal rod for each additional line shall be paid, besides the damages above provided for.... [The right of way] shall not exceed thirty feet in width....
¶ 21. The 1942 agreement added the right to construct another pipeline. The 1958 agreement changed the payment due to the grantor from twenty-five cents to one dollar per lineal rod of additional pipeline laid, stating that except as specifically amended by the 1958 agreement, the 1941 easement remained in effect. The 1958 agreement also widened the original thirty-foot right of way to fifty-five feet.
¶ 22. The issue concerning the interpretation of the granting clause of the easement was framed by Hobgood in his brief as follows: "Whether the language in the granting clause of an easement deed, (in particular, the phrase `the right of way and easement to construct, maintain and operate pipe lines and appurtenances thereto') entitled the pipeline company as a matter of law to an unqualified use of the right of way for pipeline purposes, including the right to install whatever number of pipe lines it chooses whenever it chooses for transporting whatever products it chooses, unless the language of the easement deed elsewhere expressly limits the use of the right of way."
¶ 23. Hobgood appears concerned with both the number of pipelines permitted on the easement as well as the permissibility of changing the product that can be transported.
¶ 24. In construing the language of an easement, the rules for the interpretation of deeds and other written instruments apply. Boland v. Natural Gas Pipeline Co. of America, 816 S.W.2d 843, 844 (Tex.App.1991). An instrument that is clear, definite, explicit, harmonious in all its provisions and free from ambiguity must be given effect. Pursue Energy Corp. v. Perkins, 558 So.2d 349, 352 (Miss. 1990). The courts rely on the "four corners doctrine." Under that doctrine, "an instrument is considered as a whole, in order to ascertain the intention of the parties.... In other words, an instrument should be construed in a manner `which makes sense to an intelligent layman familiar only with the basics of English language.'" Id.
¶ 25. Only if a contract or deed is ambiguous within its four corners will construction of those provisions involve triable issues of fact. Shelton v. American Ins. Co., 507 So.2d 894, 896 (Miss.1987). We do not find the present granting clause at all ambiguous.
¶ 26. The 1941 easement agreement granted an "easement to construct, maintain and operate pipe lines" (emphasis added). That agreement and the 1958 agreement also arrange for payment per lineal rod for additional pipelines that might be constructed in the future. The only limiting language in the agreement restricts the pipeline company to a specified fifty-five-foot-wide area for laying pipeline and other necessary lines, such as *844 telephone and telegraph lines. There is no allegation that replacing the twelve-inch 1941 pipeline with a new twelve-inch pipeline violates that restriction.
¶ 27. The Mississippi Supreme Court has ruled that a temporary injunction granted to a pipeline company to prevent an owner of the servient estate from interfering with the construction of additional lines of pipe was properly granted where the agreement, like the present one, allowed for payment of one dollar per lineal rod of additional pipeline. Ashcot, Inc. v. Texas Eastern Transmission Corp., 241 Miss. 392, 396, 129 So.2d 405, 407 (Miss.1961). "Right-of-way instruments, with substantially the same provisions as the one for consideration by the Court in this instance, have been construed by courts in other jurisdictions. With one accord, they have held that such instruments were not vague and indefinite; and that the grantees therein had the right, under such agreements, to lay and construct additional pipelines." Id.
¶ 28. The recorded easements give Koch the right to replace the pipeline that runs underneath Hobgood's land as well as the right to maintain and repair it, together with ingress and egress necessary for that purpose. There is no material issue of fact to be determined by a jury with respect to the meaning of the agreement.
¶ 29. Hobgood also is concerned that the substance to be carried by the new pipeline will be natural gas in a different form from that carried by the old pipeline. He wants to investigate and introduce evidence of "what right of way agents told people" about what would be carried in the pipelines back in 1941. Most of that information may be inadmissible hearsay, but it certainly is parol evidence that cannot vary the plain language of the easement. The fact that the new pipeline will carry a liquefied form of gas is not relevant under the terms of the agreement. Koch has also made arrangements for residents of the property to continue receiving natural gas in a form appropriate for household use, so no change to that right is occurring.
¶ 30. In a factually similar case, the Supreme Court of Ohio found that a pipeline company was not limited in the types of petroleum products it could transport through a pipeline where the original contract contained no such limitation. Alexander v. Buckeye Pipe Line Co., 53 Ohio St.2d 241, 374 N.E.2d 146, 151 (1978). In that case, right-of-way agreements executed in 1911 and 1947 allowed for transport of "oil" and "gas," and the property owners argued that this meant only crude oil and natural gas could be transported through the pipelines, not fuel oil, gas oil, propane and butane, or other gasoline products. "Because there is no language contained in the 1947 agreement which specifies or limits which products or substances may be transported, it follows that appellee is not limited in the kinds of products it may transport through the pipe line installed under this agreement." Id. It also found the terms "oil" and "gas" to be unambiguous and so would not allow extrinsic evidence to be introduced to determine their meaning. Id.
¶ 31. In the present case, the fact that the 1941 pipeline was constructed to carry one form of natural gas does not prevent Koch from transporting another form of natural gas in that line or any additional line built on the easement. The servient estate does not suffer an additional burden as a result of the transport of natural gas liquids as opposed to dry natural gas. See Ball v. American Telephone and Telegraph Co., 227 Miss. 218, 226, 86 So.2d 42, 44 (1956) (holding that telephone company was not restricted from using its telephone and telegraph cable lines for television transmission, as no additional burden was placed on the servient estate by such transmission).
¶ 32. The trial court properly found that there was no issue of material fact concerning the nature of the substance that *845 could be carried by the pipeline under the agreement.

III. Hobgood's Right to Damages
¶ 33. Because Hobgood's right to any damages was "inexpertly pled and not otherwise addressed in any other pleadings by either party," the trial court allowed Hobgood thirty days to amend his counter-claim. As we have held, the effect of Hobgood's failure to amend was to cause the dismissal of that claim without prejudice. There is nothing for us to review.

IV. Existence of a Due Process Violation
¶ 34. Hobgood argues that his due process rights were violated because he was not allowed time to develop the facts of the case properly before the court heard Koch's motion for summary judgment. Koch filed the original complaint on October 26, 1998. Its motion for summary judgment was filed on December 30, 1998. The hearing on Koch's motion was held on February 4, 1999. A summary judgment motion is proper "at any time after the expiration of thirty days from the commencement of the action...." M.R.C.P. 56(a).
¶ 35. A party may defend against summary judgment by presenting affidavits that prove "that he cannot for reasons stated present by affidavit facts essential to justify his opposition"; the result of such proof is that the trial court should continue the case to allow discovery to develop further. M.R.C.P. 56(f). The record shows that Hobgood propounded no discovery during the three months between the filing of the complaint and the hearing on summary judgment. The need for additional time as allowed under this rule is not proven merely through allegation:
However, the party resisting summary judgment must present specific facts why he cannot oppose the motion and must specifically demonstrate "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." United States v. Little Al, 712 F.2d 133, 135 (5th Cir.1983)
Marx v. Truck Renting and Leasing Association, Inc., 520 So.2d 1333, 1343-44 (Miss.1987). This exception in Rule 56 may not be used to avoid diligence in pursuing formal discovery; "normally the party invoking Rule 56(f) must show what steps have been taken to obtain access to the information allegedly within the exclusive possession of the other party." Id. at 1344. No such showing was even attempted, much less made. In Marx, five months passed without the defendant's attempting any discovery. Id. In this case, Hobgood never sought any discovery, not after filing his answer nor after being served with the summary judgment motion.
¶ 36. Instead of seeking discovery, Hobgood stated in his response to summary judgment that Koch "has in its possession documents which it has refused to make available voluntarily" that landowners were told years earlier that this pipeline would only transport natural gas. That response was filed January 30, 1999, four days before the hearing on the motion. Even with that response, he sought no discovery. What he did, to paraphrase the language of Marx, is to show that he had taken no steps to obtain access to information that he alleges Koch possessed.
¶ 37. Assertions appear in Hobgood's appellate brief indicating what he hoped to find if given more time to begin the search. He speculates that "just maybe, Koch may be hiding from its own attorneys, the Appellant and the Court a deed executed by Mrs. Hobgood that was not filed of record, say a deed that has been rewritten to limit the pipeline to natural gas." It is stated that "one landowner got United Gas Pipeline Company to put it in his deed what its right of way agents were saying orally, that the pipeline would carry natural gas *846 and nothing else." He does not name that landowner nor provide a copy of what would prove this assertion. Hobgood seeks the original of the right of way deed in order to discover if it has "notes or erasures," or even just staple marks that would show what might have been a limitation on use once was attached. "Koch cannot prove no staple holes with a copy," he argues. He desires to locate former United Gas Pipeline Company employees to investigate whether there was any fraud. Another appellate speculation is that Koch "may be hiding copies of correspondence or corporate resolutions that would constitute evidence in support of one or another defense to the Koch claim."
¶ 38. The procedural rules entitle a party to file for summary judgment after thirty days have passed. A trial judge should exercise discretion to refuse summary judgment if a valid, good faith reason for further discovery is shown consistent with the Rules. M.R.C.P. 56(f). As part of that exercise of discretion, the trial judge must have proof of diligence by the party seeking delay. Here there has been no diligence and at most only speculation of what might be uncovered.
¶ 39. Finally, what Hobgood alleges may be found by discovery is evidence that certain statements were made to landowners in 1941 or perhaps 1958 when these easements were acquired. The only important thing is what Mr. Hobgood's mother herself agreed when she executed the easement and supplementary documents beginning in 1941 and ending in 1958. Absent fraud, the agreement itself is the statement of the terms that are binding on both parties. What in essence Hobgood must argue is that fraud caused a different conveyance of interests in property to be recorded than his mother had intended to execute. Hobgood's counter-claim did not allege fraud, but only "disputed Plaintiffs claims of entitlement under a 1941 pipeline easement...."
¶ 40. Had fraud properly been alleged, then presumably the appropriate statute of limitations would have been interjected as an affirmative defense. That statute requires the action to be brought within ten years, subject to that limitation's period being tolled if there is concealed fraud. Miss.Code Ann. § 15-1-9 (Rev. 1995). The alleged fraud here would be at least forty and perhaps sixty years of age. It relates to a recorded instrument. The supreme court has addressed fraud in such circumstances:
The fact that the deed was duly of record prevents the rule of concealed fraud applying, for this court has said in the case of Adams v. Belt, 136 Miss. 511, 100 So. 191, at p. 194, that the rule of concealed fraud can not apply to those things that are of public record.
McMahon v. McMahon, 247 Miss. 822, 834, 157 So.2d 494, 500 (1963).
¶ 41. Hobgood's request for more time to find information fails at two levels. First, Hobgood was afforded adequate opportunity to begin the search for information from Koch and never did so. Secondly, even if he found what he speculates exists, it would avail him nothing.
¶ 42. There was no denial of due process in granting summary judgment.

V. Obligation of Koch to Bury the Pipeline Eight Feet Deep
¶ 43. Hobgood asserts that Koch must bury the new pipeline eight feet deep "to accommodate reasonable uses of the subservient estate," including the potential growth of the area. Again, we are faced with interpretation of an unambiguous agreement between the two parties whose successors in interest are before the court. The 1941 agreement as amended in 1958 specifies that the pipelines should be buried at a sufficient depth so as not to interfere with cultivation and planting of the land. The new pipeline is to be buried at a depth of thirty-six inches, slightly deeper than the 1941 pipeline, which has not been *847 shown to have interfered with any cultivation of the land.
¶ 44. The agreement provides for a specific measure of depth, namely, one that does not interfere with cultivation and planting. Should a different planned use of the land require the pipeline to be buried more deeply, that is a matter for Hobgood to seek to resolve with Koch as an amendment to the agreement. Such a change is not something that this Court can force upon either party.
¶ 45. THE JUDGMENT OF THE CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT OF HARRISON COUNTY IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] On January 4, 2000, a motion from Hobgood was received at this Court "to certify the nature of the appeal in accord with Rule 5...." That was filed over eight months after the judgment from which the appeal is sought. This motion does not comply with the interlocutory appeal procedures and would not itself permit the grant of such an appeal. Considering our ruling, we by separate order dismiss the motion as moot.