¶ 1. This litigation contests the payment of royalty interests from producing oil and *Page 560 
gas wells. A trust that owns royalty interests claims through its trustee that the defendant companies have not made proper disbursements of production proceeds. A summary judgment was granted that barred claims to proceeds that were paid more than three years prior to the date that suit was filed. Two defendants had sold their interests in the wells more than three years before this suit. The third defendant's liability for more recent payments remains to be determined in further proceedings.
 ¶ 2. On appeal, the trustee makes three arguments about these rulings. The problem with all the arguments is that there has not been a final judgment. The trial judge ended the liability of two of the defendants, and limited the potential liability of the third. No final judgment against the third defendant was entered by the time of the appeal. The trial court retains some of the issues, and from their resolution, another appeal could be taken. Piecemeal appeals are discouraged by court rules that must be followed to raise the desirability of early appellate review of a partial judgment. Even though the appellees did not note the absence of jurisdiction, we must do so. We dismiss.
 ¶ 3. In order to explain the reach of what the trial court has so far decided and why the judgment is not final, we briefly review the facts of the case. We then examine the law applicable to appeals from decisions that do not qualify as final judgments.
 FACTS ¶ 4. The plaintiff, Thomas Max Nygaard, is the trustee of the Daisy Keith Trust. That trust has among its assets certain nonparticipating royalty interests in two wells in Marion County. In 1992, Texaco Exploration Production, Inc. (Texaco E P), a predecessor to ChevronTexaco Corp., conveyed its interests in the wells to defendant J.R. Pounds, Inc. Prior to that 1992 conveyance, the defendant, Getty Oil Co., was acquired by Texaco. Therefore, all interests owned either by Getty or Texaco in the two Marion County wells have been owned by Pounds since 1992.
 ¶ 5. In 1993, Texaco E P sent Nygaard a letter explaining that certain production proceeds payable to the Daisy Keith Trust had been held in suspense by Getty, i.e., retained pending resolution of some question about the payment. The letter appears to state that the reason for the suspense was Getty's, and now Texaco's, need for documentary evidence of the Trust and Nygaard's right to receive payment. Texaco stated a precise figure that it believed totally satisfied the Trust's entitlement to further royalty. It sought a copy of the trust instrument, and also requested Nygaard's signature on a document that allocated a specific fractional interest in the wells to the Trust.
 ¶ 6. Nygaard did not accept Texaco's computation of what the Trust was owed. Additional correspondence was exchanged. From October 1993 until June 1995, Texaco sent to the Trust six checks totaling about $440,000 as disbursement of the previously suspended royalty. The amount included interest on the royalty. The payment was in Texaco's view a complete satisfaction of its obligation to the Trust. In 1996, Nygaard had an evaluation of the production independently made that took the position that the payments were insufficient to cover all past production. The dispute about the method of computation also applied to the continuing production of the two wells, which now had the defendant, Pounds, as the operator.
 ¶ 7. In December 1998, a Texaco vice president sent a letter to Nygaard that memorialized a meeting that the company, Nygaard, and others had just held. The *Page 561 
letter indicates that no agreement was reached, but Texaco's official stated that the company "remains willing to work with you" for a proper resolution of Nygaard's concerns about the manner in which the royalty had been paid. An affidavit from that vice president, prepared in 2002 for purposes of this litigation, stated that Nygaard had been told at the meeting that Texaco was satisfied that all royalty that Getty had been holding in suspense had been properly paid to the Trust and nothing further was owed.
 ¶ 8. Nygaard submitted an affidavit that agreed that Texaco did not believe in the 1998 meeting that it owed anything further to the Trust. He stated that Texaco and perhaps the other defendants "continued to refuse to open their books to me on a well by well basis and generally denied that it owed the Trust any more royalties and interest."
 ¶ 9. Suit for unpaid royalties was filed by Nygaard against Texaco, Getty, and Pounds on June 4, 2002. The claim applied to production beginning in 1980 down unto the present. All defendants moved for summary judgment based on a three year statute of limitations. From judgment for the defendants, the Trust has appealed.
 DISCUSSION ¶ 10. There is but one lawsuit before us, though the trial court entered two judgments. The Trust filed suit against three defendants. ChevronTexaco and Getty filed a joint motion for summary judgment. By an opinion and order dated June 17, 2003 but not filed and entered until June 24, the court dismissed all claims against those defendants. The partial summary judgment motion of J.R. Pounds was also granted by an order with the same dates of decision, filing, and entry. By a notice of appeal dated July 3, 2003, filed and entered on July 10, the Trust appealed.
 ¶ 11. Appeals are in most cases only to be taken from final judgments. As was stated by an eminent authority on Mississippi appellate practice, there are many reasons for such a rule.
 The final judgment rule minimizes appellate court interference with trial court proceedings, reduces the ability of a litigant to wear down an opponent with a succession of time-consuming appeals, . . . and enables the appellate court to view the case as a whole and avoid questions which may be mooted by the shifting fortunes of trial combat.
LUTHER T. MUNFORD, MISSISSIPPI APPELLATE PRACTICE § 6.1 (2001).
 ¶ 12. Though final judgments are usually required, there are at least two exceptions. One applicable here is the right of a party to request in a case involving multiple claims or parties, that the trial judge certify that there is no just reason for delay in the appeal from a judgment as to some of the parties and claims. M.R.C.P. 54(b). When that certification is made, then the appeal time of thirty days applies to the judgment. MUNFORD, MISSISSIPPI APPELLATE PRACTICE § 6.3. Neither a request nor a certification appears in this case.
 ¶ 13. The other means to seek review from a decision that does not meet the final judgment rule is to request an interlocutory appeal. Such an appeal is suitable when a resolution of some of the legal issues in a case will so affect the remainder of the litigation that further review will materially advance the completion of the suit, or protect a party from substantial injury, or resolve an issue of broad significance in the administration of justice. M.R.A.P. 5(a). A petition complying with Rule 5 must be filed with the Supreme Court/Court of Appeals Clerk within fourteen days of the judgment from *Page 562 
which the interlocutory appeal is requested. No effort was made to meet the provisions of this other approach to an appeal from something other than a final judgment.
 ¶ 14. This Court has allowed an interlocutory appeal to be taken despite the failure of the parties to realize that such an appeal procedure was needed, when the notice of appeal was filed within the time for an interlocutory appeal. Hobgood v. Koch Pipeline Southeast, Inc.,769 So.2d 838, 841 (Miss.Ct.App. 2000). Though the Supreme Court has not yet addressed the approach, there are those who believe that the Supreme Court likely would agree. MUNFORD, MISSISSIPPI APPELLATEPRACTICE § 4.3, at 4-15. The deadline for filing the petition for an interlocutory appeal is fourteen days after the entry of the judgment. M.R.A.P. 5(a). In the present appeal, the notice of appeal was filed on July 10, 2003, sixteen days after the entry of judgment on June 24, 2003. The notice of appeal is dated July 3, but it is the filing of the notice that controls.Id.
 ¶ 15. The parties desire that we resolve the appeal on the merits; the issues are fully briefed. Nonetheless, the governing rules prevent our reaching the matters presented to us. Though this may be a case in which the purposes of the final judgment rule do not seem fully in play, that actually may be an inaccurate perception. If in fact — and we do not know — the litigation has proceeded in the trial court against J.R. Pounds, then the evidence necessary to determine if the royalty has been properly computed on production since 1999 may lead to a judgment that will contain significant issues for appellate review. Even if that part of the suit is awaiting final appellate review of the 2003 summary judgments, the affirming of those judgments has the potential of restarting the trial court proceedings, leading to an actual final judgment and a new appeal. In addition, our resolution now of some of the issues in the litigation could lead to further appellate action, both through rehearing requests and the right to petition for a writ of certiorari. The efficiency of ruling on the merits today is not beyond doubt. Regardless, a ruling on the merits is beyond our jurisdiction.
 ¶ 16. It is the obligation of an appellate court to note the absence of its own jurisdiction. Michael v. Michael, 650 So.2d 469, 471 (Miss. 1995). We have so noted, and therefore dismiss.
 ¶ 17. THE APPEAL FROM THE JUDGMENT OF THE CIRCUIT COURT OF MARIONCOUNTY IS DISMISSED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., LEE, IRVING, MYERS, CHANDLER AND GRIFFIS,JJ., CONCUR.